Sylvio **COURNOYER**, Plaintiff,
Appellant,

v.

**MASSACHUSETTS BAY TRANSPORTA-
TION AUTHORITY, Et Al.,**
Defendants, Appellees.

No. 83–1906.

United States Court of Appeals,
First Circuit.

Argued May 7, 1984.

Decided July 11, 1984.

Elizabeth Mulvey, Boston, Mass., with whom Andrew C. Meyer, Jr., and Lubin & Meyer, Boston, Mass., were on brief, for plaintiff, appellant.

John R. Duxbury, Boston, Mass., for defendant, appellee AMCA Intern. Corp.

Before COFFIN and BREYER, Circuit Judges, and PETTINE,* Senior District Judge.

PETTINE, Senior District Judge.

In this diversity case, the plaintiff/appellant, Sylvio Cournoyer, claims that he was injured on October 19, 1977, while sandblasting the steel girders of an elevated streetcar structure owned by the Massachusetts Bay Transportation Authority (MBTA). He says that he was standing on the roof of an ungrounded steel building when an electric current arced from the MBTA structure to the building, shocking the appellant and causing him to fall forty feet to the ground. At the time of the accident, the appellant was employed by the Town Hall Construction Company, which had contracted with MBTA for maintenance of the structure. The appellant says that the steel building was "designed, supplied and constructed" in late 1969 or early 1970 by the Priggen Steel Building Company (Priggen), an assertion uncontested by the appellee. The appellee acknowledges that it purchased Priggen in 1973, assuming all of Priggen's assets and liabilities.

In Count II of the appellant's second amended complaint, he charged the appellee with negligence for various acts committed by Priggen. In Count X, the appellee was charged (again through Priggen) with breach of express and implied warranties to design the building in an architecturally sound manner. The plaintiff now appeals from the district judge's allowance of the appellee's motion for summary judgment as to both counts. The motion was based upon the following statute of repose:

Actions of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property shall be commenced only within three years next after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the performance or furnishing of such design, planning, construction or general administration.

Mass.Gen.Laws Ann. ch. 260, § 2B (West Supp. 1983).

The Supreme Judicial Court of Massachusetts has explained that

[a] statute of limitations normally governs the time within which legal proceedings must be commenced after the cause of action accrues. A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action. The injury need not have occurred, much less have been discovered. As a statute of repose, G.L. c. 260, § 2B, precludes recovery against those within the protection of the statute for any injury which occurs more than six years after the performance or furnishing of the design, planning, construction, or general administration of an improvement to real property. Simply put, after six years, the statute completely eliminates a cause of action against certain persons in the construction industry.

*Klein v. Catalano*, 386 Mass. 701, 702, 437 N.E.2d 514, 516 (1982) (footnotes and citations omitted).

Of course, it hardly need be said that the Supreme Judicial Court of Massachusetts is the "final judicial arbiter" of the meaning of ch. 260, § 2B. *See Gurley v. Rhoden*, 421 U.S. 200, 208, 95 S.Ct. 1605, 1610, 44 L.Ed.2d 110 (1975).

It is uncontested, as we think it would have to be, that if ch. 260, § 2B applies to this case the district court was correct in granting summary judgment for the appellee. As noted above, Priggen completed

* Of the District of Rhode Island, sitting by designation.

the building in 1969 or 1970, but the appellant did not file suit until 1980. The appellant argues first, however, that the sixty-foot building on which he was standing at the time of the accident "more closely resembles a product than an improvement to real property." This perception is based upon the plaintiff's allegation that the building is

> a pre-fabricated structure and not the result of an original architectural design. This steel building was mass-produced in much the same way as a metal tool shed from Sears Roebuck, and identical buildings had been constructed on previous occasions. No engineering was involved in the design of this warehouse assembled by Priggen on the East Cambridge site. In fact, Priggen itself described the structure as a "pre-fabricated, pre-engineered metal building" that was available in a choice of "our six standard colors."

Appellant's Brief at 4 (references to appendix omitted).

■ Even if we assume the accuracy of this description of the building in question, we cannot say that the building is not an improvement to real property within the meaning of ch. 260, § 2B. In construing this section soon after the *Klein* decision, the Massachusetts Appeals Court referred to the following definition of "improvement": "a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs." *Raffel v. Perley*, 14 Mass.App.Ct. 242, 245, 437 N.E.2d 1082, 1084 (1982) (quoting Webster's Third New International Dictionary (1971)). In light of this definition, the appellant's allegation that the building in question was prefabricated is beside the point. Obviously, there is nothing inherent in the nature of a prefabricated building that would take it out of this definition, and we find nothing in the record that would do so. We must conclude, therefore, that the building in question is an improvement to real property within the meaning of ch.

260, § 2B. *See also Montaup Electric Co. v. Ohio Brass Corp.*, 561 F.Supp. 740, 747–48 (D.R.I.1983) (finding that an electric transmission line is an improvement to real property within the meaning of ch. 260, § 2B).

■ The appellant's next argument is that, even if the building from which he fell is an improvement to real property within the meaning of the statute, the appellee nevertheless cannot take advantage of ch. 260, § 2B because its predecessor in interest was not a member of the class that the statute was designed to protect. It is true that the Supreme Judicial Court of Massachusetts has said that the statute "has the effect of granting immunity from suit only to architects, engineers, contractors, and others involved in the design, planning, construction, or general administration of improvements to real property...." *Klein*, 386 Mass. at 715, 437 N.E.2d at 523. The appellant says that Priggen fell into none of these classifications, and that the company was merely the supplier of a product, namely the component parts of metal buildings. And it seems clear that under *Klein* a supplier is without the statute's protection. *See id.* at 716, 437 N.E.2d at 524 (explaining how the Massachusetts Legislature could "have reasonably concluded that it is appropriate to place separate time limits on the liability of builders and suppliers").

For the sake of argument we are willing to assume that Priggen was in fact a supplier within some meaning of the term. But after our examination of the record we think that it is undeniable that Priggen was *also* the building's designer. Indeed, the appellant admits this on the first page of his brief to this court. As a designer, of course, Priggen falls squarely within the terms of ch. 260, § 2B and is entitled to its protection. In light of this at least potentially dual role of the appellee as both supplier *and* designer of the building in question, one argument would appear to be essential to a successful evasion of the statute in this case: that the appellant was

injured by the appellee's negligent act *committed in its role as a supplier*. In light of the distinction drawn by *Klein* between suppliers and manufacturers on the one hand and those "involved in the design, planning, construction, or general administration of improvements to real property" on the other, we are unwilling to say that one who performed roles in both groups would under no circumstances be amenable to suit after the running of the statute of repose.[1] This possibility plays no role in the instant case, however, simply because the appellant has made no specific allegation of negligence by Priggen in what we are willing to assume was its role as a supplier. Without such an allegation, the appellant must stand by his own characterization of Priggen as a designer, thereby granting the appellee at least a prima facie entitlement to the protection of the statute, one that remains unrebutted. In short, this attempt by the appellant to escape the guillotine of ch. 260, § 2B must fail.

The appellant also seems to make the related argument that, even if Priggen did design the building from which the appellant fell, Priggen was not the *sort* of designer that the statute was intended to protect. The appellant says that the "real purpose" of the statute, one that "justifies the special privilege accorded to architects and designers," is "to encourage creativity and new trends in the planning of individual structures." Therefore, the appellant argues, "[t]he grant of summary judgment in favor of the [appellee] was clearly inappropriate, as a jury could find that [the appellee's] role in supplying component parts for the building did not reach the level of creativity or individuality necessary to invoke the protection of G.L. c. 260 § 2B."

Even if we were to find merit in this argument, it would be inadequate to exclude this appellee from the protection of the statute. This is so because, as the district court explained, "[t]hough protection of experimental designs is an important purpose of the statute, it is not the sole purpose. The law also recognizes that once a building is completed, a builder or contractor has little or no control over the treatment of the structure." The district court based this conclusion on *Klein*, which stated that

"there exists the possibility of neglect, abuse, poor maintenance, mishandling, improper modification, or unskilled repair of an improvement to immovable property by the owner, lessor or tenant. It is difficult for the architect or contractor to guard against such occurrences because, after the acceptance by the owner, the architect or contractor ordinarily has neither control of the improvement nor the right to enter or inspect the improvement."

286 Mass. at 716, 437 N.E.2d at 524 (quoting *Burmaster v. Gravity Drainage Dist. No. 2*, 366 So.2d 1381, 1385–86 (La.1978)).

This rationale for ch. 260, § 2B is hardly dependent on some minimum level of creativity on the part of the building designer. Therefore, we are unwilling to say that the appellee is not entitled to the statute's protection simply because the building designed and supplied by Priggen was allegedly prefabricated and mass-produced.[2]

■ Finally, the appellant argues that the district court should have refused to apply ch. 260, § 2B to this case because the statute is unconstitutional. He asserts that the statute "falls short of the traditional equal protection standards applied by the United States Supreme Court because

---

**1.** For example, were a single defendant to have designed a residential structure and supplied, say, a faulty, mass-produced plumbing fixture that resulted in an injury, we do not think that he would necessarily be protected by ch. 260, § 2B in his role as a supplier.

**2.** As for the appellant's argument that other states have treated architects of "mass-produced

development homes" (we assume that the appellant here draws an analogy to the allegedly prefabricated building sold by Priggen) as manufacturers of a standardized product, we note only that the appellant is knocking at the wrong courthouse door. In this diversity case, we will not second guess the wisdom of a state statute or its interpretation by the state's highest court.

it draws arbitrary distinctions among classes of potential defendants in cases involving improvements to real property." Appellant's Brief at 12.[3] We note first that the district court considered and dismissed this argument simply by stating:

It is clear that the statute bears a rational relationship to a legitimate public purpose. As noted above, the legislature could legitimately limit liability in order to enhance architectural experimentation and creativity. In addition, the statute eliminates the unfairness of exposing architects, contractors and others who fall within the statutory ambit from limitless exposure to liability for injuries sustained in buildings over which they long ago gave up any control.

In other words, because the appellant does not allege that any suspect classification or fundamental right is involved in this case, the minimum rationality standard of review of legislative classification applies, *Cadieux v. International Telephone & Telegraph Corp.*, 593 F.2d 142, 145 (1st Cir. 1979), and the district court concluded that there was a rational basis for the classification. We also note that the *Klein* court considered a similar argument against the constitutionality of ch. 260, § 2B and reached this same conclusion. 386 Mass. at 714–17, 437 N.E.2d at 523–25.

Undoubtedly, there is a split of authority regarding the constitutionality of statutes of repose or limitation similar to ch. 260, § 2B. *See McClanahan v. American Gilsonite Co.*, 494 F.Supp. 1334, 1344–45 (D.Colo.1980) (collecting cases). In light of our examination of the cases cited by the appellant and other cases as well, however, we find ourselves in agreement with the perception that many of the opinions finding such statutes to be unconstitutional "recite general rules which are applicable in equal protection cases but ... generally fail to discuss the legislative policies underlying the special statutes and the possible

distinctions between the potential classes of defendants." Note, *Actions Arising Out of Improvements to Real Property: Special Statutes of Limitation*, 57 N.D.L. Rev. 43, 60 (1981) (footnotes omitted). *See, e.g., State Farm Fire and Casualty Co. v. All Electric, Inc.*, 660 P.2d 995 (Nev.1983); *Loyal Order of Moose, Lodge 1785 v. Cavaness*, 563 P.2d 143, 147–48 (Okla.1977); *Fujioka v. Kam*, 55 Haw. 7, 514 P.2d 568, 570–72 (1973). We believe that such a discussion of legislative policies is critical to an adequate analysis of any statute challenged on equal protection grounds. And where, as here, the statute need reflect no more than minimum rationality to survive attack, the discussion may be quite broad in scope. Indeed, in order to uphold ch. 260, § 2B, we need decide only that "the legislature 'could have concluded rationally' that the discrimination [between classes of defendants] was justifiable and 'could rationally have distinguished' between the classifications under attack." *Frazier v. Manson*, 703 F.2d 30, 34 (2d Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 339, 78 L.Ed.2d 308 (1983) (quoting *McGinnis v. Royster*, 410 U.S. 263, 274, 93 S.Ct. 1055, 1061, 35 L.Ed.2d 282 (1973)) (emphasis supplied). *See also Clements v. Fashing*, 457 U.S. 957, 963, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982) ("Classifications are set aside only if they are based solely on reasons totally unrelated to the State's goals and only if no grounds can be conceived to justify them.")

 Fortunately, we need not ponder the possible rational bases for ch. 260, § 2B, because the Supreme Judicial Court of Massachusetts examined the issue thoroughly in *Klein.* As we have already noted in part, the *Klein* court stated that the distinction between "classes of potential defendants in cases involving improvements to real property," as the appellant has put the matter, could be rationally based on the

---

**3.** The appellee has not alleged that the appellant is without standing to make this argument, and, in light of the disposition that follows, we decline to raise the issue for the first time now. We note, however, that the question is one of no

small difficulty. *Compare Klein,* 386 Mass. at 713–14, 437 N.E.2d at 522–23, *with Adair v. Koppers Co.,* 541 F.Supp. 1120, 1129–30 (N.D. Ohio 1982).

facts that (1) a designer or contractor " 'ordinarily has neither control of the improvement nor the right to enter or inspect the improvement' "; (2) "the inspection, supervision and observation of construction by architects and contractors involves individual expertise not susceptible to the quality control standards" of a supplier of mass-produced goods; and (3) "[a] limit on liability may be necessary to encourage [architects, engineers and other design professionals] to experiment with new designs and materials." 386 Mass. at 716–17, 437 N.E.2d at 524. *See also Beecher v. White,* 447 N.E.2d 622, 626–27 (Ind.Ct.App.1983) (suggesting still other possible rational bases for a similar statute). We think these bases for the classification are more than adequate to meet the rational basis test. Therefore, we agree with the district court's conclusion that ch. 260, § 2B is not unconstitutional on equal protection grounds.

In light of the above, the district court's allowance of the appellee's motion for summary judgment is AFFIRMED.