406 S.E.2d 440

**Janet L. GIBSON and Carol L. Holcomb, Plaintiffs Below, Appellants,**

v.

**WEST VIRGINIA DEPARTMENT OF HIGHWAYS, an Agency of the State of West Virginia, and William S. Ritchie, Jr., West Virginia Commissioner of Highways and His Successor as Such, Defendants Below, Appellees.**

No. 19712.

Supreme Court of Appeals of West Virginia.

Submitted March 5, 1991.

Decided May 24, 1991.

---

William C. Garrett, Gassaway, for appellants.

Thomas V. Flaherty, John R. McGhee, Jr., Kay, Casto, Chaney, Love & Wise, Charleston, for appellees.

J. Michael Benninger, Morgantown, James C. Peterson, Charleston, for amicus W.V. Trial Lawyers Ass'n.

MILLER, Chief Justice:

This certified question from the Circuit Court of Nicholas County [1] asks whether W.Va.Code, 55–2–6a, which bars the filing of a suit for design or construction defects against architects, builders, and others ten years after the construction project is complete, violates the constitutional guarantees of substantive due process, equal protection, and access to the courts. [2] We find this statute to be constitutional.

## I.

### FACTS

On December 8, 1987, the plaintiffs, Janet L. Gibson and Carol L. Holcomb, were injured when the vehicle they were riding in collided with a truck at an intersection known as the Irish Corner on U.S. Route 19 in Summersville, West Virginia. The plaintiffs sued, among others, the West Virginia Department of Highways (DOH), claiming that the highway was extremely hazardous at this intersection because of improper construction. [3] The DOH filed a motion for summary judgment because the suit was filed more than ten years after the highway was completed; [4] thus, it was barred by W.Va.Code, 55–2–6a.

## II.

### STATUTES OF REPOSE

Briefly summarized, W.Va.Code, 55–2–6a, [5] limits the time period in which a suit

---

1. This certification is made pursuant to W.Va. Code, 58–5–2 (1967).

2. The certified question provides: "Does W.Va. Code 55–2–6a containing the ten year Statute of Limitations apply to this civil action, or is said Code section unconstitutional?"

3. The plaintiffs also sued both drivers and the company which owned the truck. Since this action was filed, the plaintiffs have settled their claims against these three defendants.

4. The highway was completed in June of 1975 and accepted by the DOH on July 21, 1975.

5. W.Va.Code, 55–2–6a, provides:
   "No action, whether in contract or in tort, for indemnity or otherwise, nor any action for contribution or indemnity to recover damages for any deficiency in the planning, design, surveying, observation or supervision of any construction or the actual construction of any improvement to real property, or, to recover damages for any injury to real or per-

may be filed for deficiencies in the planning, design, or supervision of construction of an improvement to real property to ten years. This period commences on the date the improvement is occupied or accepted by the owner of the real property, whichever occurs first.

■ The time period operates independently of when the injury actually occurs. Some courts refer to this type of statute as one of repose, as distinguished from a statute of limitations. A statute of limitations ordinarily begins to run on the date of the injury; whereas, under a statute of repose, a cause of action is foreclosed after a stated time period regardless of when the injury occurred.[6] The Virginia Supreme Court explained the difference between the two types of statutes in *Hess v. Snyder Hunt Corp.*, 240 Va. 49, 52, 392 S.E.2d 817, 819 (1990):

> "A 'statute of repose' differs from a 'statute of limitations.' Generally, the time limitation in the latter begins to run when the cause of action accrues. The time limitation in a statute of repose, however, 'begins to run from the occurrence of an event unrelated to the accrual of a cause of action.' *School Bd. of the City of Norfolk v. U.S. Gypsum*, 234 Va. 32, 37, 360 S.E.2d 325, 327 (1987). Furthermore, the expiration of the time extinguishes 'not only the legal remedy but also all causes of action, including those which may later accrue as well as those already accrued.' *Id.* at 37, 360 S.E.2d at 327–28."

*See also Turner Constr. Co. v. Scales*, 752 P.2d 467 (Alaska 1988).

Recently, in *Shirkey v. Mackey*, 184 W.Va. 157, 399 S.E.2d 868 (1990), we discussed whether the time period in W.Va. Code, 55–2–6a, was tolled until the construction defect was discovered. There, the plaintiffs' home sustained severe damage to its foundation because improper fill material had been used. The Shirkeys did not discover the construction defect until twelve years after the house was built. We determined that the discovery rule did not toll the statutory time period because the provision had a substantive quality in that it applied "regardless of the date of injury" 184 W.Va. at 159, 399 S.E.2d at 870.

## III.

## DUE PROCESS AND EQUAL PROTECTION

■ The plaintiffs contend that W.Va. Code, 55–2–6a, is unconstitutional because it violates both substantive due process and equal protection guarantees. We begin by recognizing that where a statute solely affects economic rights, we accord considerable deference to the legislative enactment. We applied this principle in *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co.*, 174 W.Va. 538, 328 S.E.2d 144 (1984). Hartsock–Flesher alleged that Wheeling Wholesale was selling cigarettes below cost, in violation of W.Va.Code, 47–11A–2. Wheeling Wholesale moved to dismiss the case claiming that the Unfair Trade Practices Act, W.Va.Code, 47–11A–1,

sonal property, or, for an injury to a person or for bodily injury or wrongful death arising out of the defective or unsafe condition of any improvement to real property, may be brought more than ten years after the performance or furnishing of such services or construction: Provided, that the above period shall be tolled according to the provisions of section twenty-one [§ 55–2–21] of this article. The period of limitation provided in this section shall not commence until the improvement to the real property in question has been occupied or accepted by the owner of real property, whichever occurs first."
The DOH did not raise the defense of governmental immunity because the plaintiffs' suit

sought recovery solely against the State's insurance carrier; thus, the constitutional bar to suits against the State did not apply. W.Va. Const. VI, § 35. *See Pittsburgh Elevator Co. v. West Virginia Bd. of Regents*, 172 W.Va. 743, 310 S.E.2d 675 (1983).

6. In *Stevens v. Saunders*, 159 W.Va. 179, 220 S.E.2d 887 (1975), we used the term "statute of repose" when referring to our statute of limitations for personal injuries. One of the main purposes of a statute of limitations is to require the filing of suits within the time stated, and, in this regard, a statute of limitations does put an end, or repose, to litigation. However, a true statute of repose operates independently from the date the cause of action arises.

*et seq.*, violated substantive due process and equal protection principles.

Initially, we reviewed the history of substantive due process and narrowed the holding in our leading case of *State v. Wender*, 149 W.Va. 413, 141 S.E.2d 359 (1965).[7] We indicated that despite its discretionary language, the *Wender* court failed to understand that in matters of economic legislation, the legislature must be accorded considerable deference under a due process standard. This statute involves a procedural bar as to a civil action to collect damages for personal injuries. The fact that there is court involvement does not alter the economic basis underlying the right to sue.

A similar deference is given to statutes affecting economic rights under an equal protection analysis. As we explained in Syllabus Point 4 of *Hartsock-Flesher:*

"'Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classification is rational and bears the requisite reasonable relationship, the statute does not violate Section 39 of Article VI of the West Virginia Constitution.' Syllabus Point 7, *Atchinson v. Erwin*, 172 W.Va. 8, 302 S.E.2d 78 (1983)."[8]

The reference in Syllabus Point 4 of *Hartsock-Flesher* to the equal protection clause stated to have been found in Article VI, Section 39 of the West Virginia Constitution has since been clarified. In *Israel v. West Virginia Secondary Schools Activities Commission*, 182 W.Va. 454, 460, 388 S.E.2d 480, 486 (1989), we acknowledged that the precise "phrase 'equal protection' is not found in our constitution, [although] its principles are an integral part of our constitutional law." (Citations omitted). Moreover, we admitted that our cases "have not been uniform as to where [the equal protection] principle reposes in our constitution."[9] 182 W.Va. at 460, 388 S.E.2d at 486. We also observed that the same problem exists in the United States Constitution because the words "equal protection" appear only in the Fourteenth Amendment, which applies exclusively to the states.[10] Despite this omission, the

---

**7.** In Syllabus Point 1 of *Wender*, we held:
  "The legislature is vested with a wide discretion in determining what the public interest requires, the wisdom of which may not be inquired into by the courts; however, to satisfy the requirements of due process of law, legislative acts must bear a reasonable relationship to a proper legislative purpose and be neither arbitrary nor discriminatory."

**8.** Our analysis under substantive due process and equal protection principles is identical to that used by the United States Supreme Court. *See, e.g., Rice v. Norman Williams Co.*, 458 U.S. 654, 665, 102 S.Ct. 3294, 3302, 73 L.Ed.2d 1042, 1053 (1982) ("There can be little doubt but that the designation statute is rationally related to the statute's legitimate purposes."); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 15, 96 S.Ct. 2882, 2892, 49 L.Ed.2d 752, 766 (1976) ("[L]egislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and ... the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way.").

**9.** In note 13 of *Israel*, 182 W.Va. at 460, 388 S.E.2d at 486, we listed several cases where we have identified different constitutional provisions as embodying the concept of equal protection:

  "*Robertson v. Goldman*, [179 W.Va. 453, 369 S.E.2d 888 (1988) ] (art. III, § 10, due process clause); *State v. Memorial Gardens Dev. Corp.*, 143 W.Va. 182, 101 S.E.2d 425 (1957) (art. III, § 10, due process clause); *State ex rel. Longanacre v. Crabtree*, [177 W.Va. 132, 350 S.E.2d 760 (1986) ] (art. VI, § 39, special laws prohibited); *Peters v. Narick*, [165 W.Va. 622, 270 S.E.2d 760 (1980) ] (art. III, § 17, right to equal protection is guaranteed); *Linger v. Jennings*, [143 W.Va. 57, 99 S.E.2d 740 (1957) ] (art. III, § 17, denial of justice and open courts)."

**10.** In *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954), the respondents argued that because the Fifth Amendment did not have an "equal protection" clause, segregation was permissible in the public schools of the District of Columbia. The United States Supreme Court rejected this argument, finding that "the concepts of equal protection and due process, both stemming from our American ideal of fairness, are not mutually exclusive." 347 U.S. at 499, 74 S.Ct. at 694, 98 L.Ed. at 886. Since *Bolling* was decided, the United State Supreme Court's "approach to Fifth Amendment equal protection

United States Supreme Court "has traditionally found that the concept of equal protection is embodied in the Due Process Clause of the Fifth Amendment." 182 W.Va. at 460, 388 S.E.2d at 486. Thus, "to finally settle where our state's constitutional equal protection principle is located, we hold that it is a part of our Due Process Clause found in Article III, Section 10 of the West Virginia Constitution[.]" 182 W.Va. at 461, 388 S.E.2d at 487. (Footnote omitted).[11]

■ In light of our holding in *Israel*, we now modify Syllabus Point 4 of *Hartsock–Flesher* and Syllabus Point 7 of *Atchinson* to remove the reference to Article VI, Section 39 of our Constitution and substitute Article III, Section 10:

" 'Where economic rights are concerned, we look to see whether the classification is a rational one based on social, economic, historic or geographic factors, whether it bears a reasonable relationship to a proper governmental purpose, and whether all persons within the class are treated equally. Where such classifi-

cation is rational and bears the requisite reasonable relationship, the statute does not violate Section 10 of Article III of the West Virginia Constitution, which is our equal protection clause.' Syllabus Point 7, [as modified,] *Atchinson v. Erwin*, [172] W.Va. [8], 302 S.E.2d 78 (1983)." Syllabus Point 4, as modified, *Hartsock–Flesher Candy Co. v. Wheeling Wholesale Grocery Co., supra.*

■ Our standards for substantive due process and equal protection analyses are similar to those used in other states. In those jurisdictions whose legislatures have enacted architect and builder statutes of repose similar to ours, a majority of courts have upheld the enactments when they have been challenged on substantive due process or equal protection grounds.[12] Even those jurisdictions that have found a statute of repose unconstitutional have concluded that there are no suspect classes or fundamental rights involved. Consequently, a strict scrutiny test for equal protection analysis is unnecessary. These courts have found a statute of repose unconstitu-

---

claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment." *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n. 2, 95 S.Ct. 1225, 1228 n. 2, 43 L.Ed.2d 514, 519 n. 2 (1975). (Citations omitted).

**11.** Article III, Section 10 of the West Virginia Constitution provides: "No person shall be deprived of life, liberty, or property, without due process of law, and the judgment of his peers."

**12.** *See Cournoyer v. Massachusetts Bay Transp. Auth.*, 744 F.2d 208 (1st Cir.1984); *Hartford Fire Ins. Co. v. Lawrence, Dykes, Goodenberger, Bower & Clancy*, 740 F.2d 1362 (6th Cir.1984); *Adair v. Koppers Co.*, 541 F.Supp. 1120 (N.D.Ohio 1982), *aff'd*, 741 F.2d 111 (6th Cir.1984); *Cudahy Co. v. Ragnar Benson, Inc.*, 514 F.Supp. 1212 (D.Colo.1981); *President & Directors of Georgetown Coll. v. Madden*, 505 F.Supp. 557 (D.Md.1980), *aff'd in part, dismissed in part*, 660 F.2d 91 (4th Cir.1981); *Smith v. Allen–Bradley Co.*, 371 F.Supp. 698 (W.D.Va.1974); *Carter v. Hartenstein*, 248 Ark. 1172, 455 S.W.2d 918 (1970), *appeal dismissed*, 401 U.S. 901, 27 L.Ed.2d 800, 91 S.Ct. 868 (1971); *Barnhouse v. City of Pinole*, 133 Cal.App.3d 171, 183 Cal.Rptr. 881 (1982); *Yarbro v. Hilton Hotels Corp.*, 655 P.2d 822 (Colo.1982); *Cheswold Vol. Fire Co. v.*

*Lambertson Constr. Co.*, 462 A.2d 416 (Del.Super.1983), *aff'd*, 489 A.2d 413 (Del.1984); *Mullis v. Southern Co. Servs., Inc.*, 250 Ga. 90, 296 S.E.2d 579 (1982); *Twin Falls Clinic & Hosp. Bldg. Corp. v. Hamill*, 103 Idaho 19, 644 P.2d 341 (1982); *Matayka v. Melia*, 119 Ill.App.3d 221, 74 Ill.Dec. 851, 456 N.E.2d 353 (1983); *Beecher v. White*, 447 N.E.2d 622 (Ind.App.1983); *Burmaster v. Gravity Drainage Dist. No. 2*, 366 So.2d 1381 (La.1978); *Whiting–Turning Contracting Co. v. Coupard*, 304 Md. 340, 499 A.2d 178 (1985); *Klein v. Catalano*, 386 Mass. 701, 437 N.E.2d 514 (1982); *O'Brien v. Hazelet & Erdal*, 410 Mich. 1, 299 N.W.2d 336 (1980); *Calder v. City of Crystal*, 318 N.W.2d 838 (Minn.1982); *Reeves v. Ille Elec. Co.*, 170 Mont. 104, 551 P.2d 647 (1976); *Rosenberg v. Town of North Bergen*, 61 N.J. 190, 293 A.2d 662 (1972); *Howell v. Burk*, 90 N.M. 688, 568 P.2d 214 (App.), *cert. denied*, 91 N.M. 3, 569 P.2d 413 (1977); *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 302 S.E.2d 868 (1983); *Freezer Storage, Inc. v. Armstrong Cork Co.*, 234 Pa.Super. 441, 341 A.2d 184 (1975); *Leeper v. Hillier Group, Architects Planners, P.A.*, 543 A.2d 258 (R.I.1988); *Harmon v. Angus Jessup Assocs., Inc.*, 619 S.W.2d 522 (Tenn.1981); *Sowders v. M.W. Kellogg Co.*, 663 S.W.2d 644 (Tex.App.1984); *Yakima Fruit & Cold Storage Co. v. Central Heating & Plumbing Co.*, 81 Wash.2d 528, 503 P.2d 108 (1972).

tional because the protected class selected, i.e., builders and architects, was too exclusive. As a result, there was no rational basis for not affording the same protection to suppliers of material used in the construction or owners or tenants of the real property.[13]

■ These courts have failed to recognize that under the rational basis test, the determination of the group or class to be protected by the statute is peculiarly a legislative judgment. The Supreme Court expressed this point in *Schweiker v. Wilson*, 450 U.S. 221, 234, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186, 198 (1981), *quoting Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 314, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520, 525 (1976):

> " 'This inquiry employs a relatively relaxed standard reflecting the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative task and an unavoidable one. Perfection in making the necessary classification is neither possible nor necessary.' " (Citation omitted).

*United States R.R. Retirement Bd. v. Fritz*, 449 U.S. 166, 101 S.Ct. 453, 66 L.Ed.2d 368 (1980). *See also Village of Belle Terre v. Boraas*, 416 U.S. 1, 8, 94 S.Ct. 1536, 1542, 39 L.Ed.2d 797, 803–04 (1974) ("But every line drawn by a legislature leaves some out that might well have been included. That exercise of discretion, however, is a legislative, not a judicial, function.").

The purpose of this type of statute of repose is to protect architects and builders from the increased exposure to liability as a result of the demise of the privity of contract defense. *See, e.g., Cheswold Vol. Fire Co. v. Lambertson Constr. Co.*, 489 A.2d 413 (Del.1984); *Klein v. Catalano*, 386 Mass. 701, 437 N.E.2d 514 (1982); *Walsh v. Gowing*, 494 A.2d 543 (R.I.1985); Comment, *Limitation on Action Statutes*

*for Architects and Builders—Blueprints for Non-Action*, 18 Cath.U.L.Rev. 361 (1969). Without a statute of repose, a party injured because of a latent design or defect could sue an architect or builder many years after a construction project was completed. This could result in stale claims with a distinct possibility of loss of relevant evidence and witnesses. *See Zapata v. Burns*, 207 Conn. 496, 542 A.2d 700 (1988); *Cheswold Vol. Fire Co. v. Lambertson Constr. Co., supra; Klein v. Catalano, supra.*

Because architects and builders were the ones primarily exposed to increased liability when privity of contract was abolished, we cannot fault our legislature for protecting this group. Furthermore, our statute is not so narrowly drawn as some in other jurisdictions. W.Va.Code, 55–2–6a, has a ten-year limitation and bars recovery in three general areas. The first relates to damages "for any deficiency in the planning, design, surveying, observation or supervision of any construction[.]" The second involves damages arising from "the actual construction of any improvement to real property[.]" The third area is "for an injury to a person or for bodily injury or wrongful death arising out of the defective or unsafe condition of any improvement to real property[.]"

In analyzing a statute of repose, consideration must be given to the time period after which the cause of action is barred. Obviously, this time period must bear some rational relationship to the goal sought to be achieved by the statute. We addressed a similar concern in *O'Neil v. City of Parkersburg*, 160 W.Va. 694, 237 S.E.2d 504 (1977), where we struck down W.Va.Code, 8–12–20 (1969) on both equal protection and due process grounds. This statute provided that a plaintiff had to give written notice to a municipality within thirty days

---

**13.** *See, e.g., Turner Constr. Co. v. Scales, supra; Henderson Clay Prods., Inc. v. Edgar Wood & Assocs., Inc.*, 122 N.H. 800, 451 A.2d 174 (1982);

*Broome v. Truluck*, 270 S.C. 227, 241 S.E.2d 739 (1978); *Funk v. Wollin Silo & Equip., Inc.*, 148 Wis.2d 59, 435 N.W.2d 244 (1989).

after he was injured because of the negligence of municipality employees, otherwise his suit was barred. We held that such an abrupt notice period was unconstitutional.[14]

In addressing this concern, several courts have considered evidence from a study presented at congressional hearings.[15] This study analyzed a group of cases to determine how long after a construction project was completed that a suit was filed against architects and builders. The cases were from jurisdictions without a statute of repose. The study revealed that 93 percent of claims brought against architects or builders for design defects were brought within six years of the project's completion and 99.6 percent were filed within ten years.[16] We conclude that the ten-year period in W.Va.Code, 55–2–6a, strikes a reasonable and rational balance between the rights of an injured plaintiff and the need to fix some outer time limit on liability for those engaged in designing and constructing improvements to real property.

## IV.

## RIGHT OF CERTAIN REMEDY UNDER ARTICLE III, SECTION 17 OF THE WEST VIRGINIA CONSTITUTION

The certain remedy provision is one of three rights contained in Article III, Section 17.[17] The first right provides that the "courts of this State shall be open[.]" For convenience, we term this the "open-court" provision.[18] The second right is embodied in the language "every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law[.]" For simplicity, we term this the "certain remedy" provision. The third right is that "justice shall be administered without sale, denial or delay." [19]

Although we have previously explored both the open-court provision and the sale of justice provision, we have not addressed the history of the certain remedy provision in Article III, Section 17. It is similar to provisions contained in a number of other state constitutions.[20] Commentators have

**14.** Syllabus Point 1 of *O'Neil* states:
"A legislative act which arbitrarily establishes diverse treatment for the members of a natural class results in invidious discrimination and where such treatment or classification bears no reasonable relationship to the purpose of the act, such act violates the equal protection and due process clauses of our federal and state constitutions."
In *State ex rel. S.M.B. v. D.A.P.,* 168 W.Va. 455, 284 S.E.2d 912 (1981), we found W.Va.Code, 48–7–1 (1969), which provided for a three-year statute of limitations for bringing a paternity action, unconstitutional. Statutes whose classifications are premised on legitimacy or illegitimacy must be substantially related to an important government objective. *See Shelby J.S. v. George L.H.,* 181 W.Va. 154, 381 S.E.2d 269 (1989).

**15.** *See* Hearings on H.R. 6527, H.R. 6678, and H.R. 11544 before Subcommittee No. 1 of the House Committee on the District of Columbia, 90th Cong., 1st Sess. 34 (1967). *See, e.g., Klein v. Catalano, supra.*

**16.** This information is tabulated in Comment, *Limitation of Action Statutes for Architects and Builders—Blueprints for Non–Action,* 18 Catholic U. of Amer.L.Rev. at 367.

**17.** Article III, Section 17 provides: "The courts of this State shall be open, and every person, for an injury done to him, in his person, property or reputation, shall have remedy by due course of law; and justice shall be administered without sale, denial or delay."

**18.** We discussed the open-court provision at length in *State ex rel. Herald Mail Co. v. Hamilton,* 165 W.Va. 103, 267 S.E.2d 544 (1980), and observed that this provision is common in other state constitutions. Its primary purpose is to permit the public to attend both civil and criminal trials:
"The uniform interpretation of the mandate that the courts 'shall be open' by those state courts called upon to construe the provision in their constitutions is that this language confers an independent right on the public to attend civil and criminal trials, and not simply a right in favor of the litigants to demand a public proceeding." 165 W.Va. at 110, 267 S.E.2d at 548. (Citations omitted).

**19.** In *State ex rel. Shrewsbury v. Poteet,* 157 W.Va. 540, 202 S.E.2d 628 (1974), we held that a statute allowing a justice of the peace to charge a $5.00 fee for each civil case was the sale of justice in violation of Article III, Section 17.

**20.** In footnote 1 of Note, *Constitutional Guarantees of A Certain Remedy,* 49 Iowa L.Rev. 1202 (1964), these states are listed:
"Okla. Const. art. 2, § 6. See Ala. Const. art. 1, § 13; Ark. Const. art. 2, § 13; Colo. Const. art. 2, § 6; Conn. Const. art. 1, § 12; Del. Const. art. 1, § 9; Fla. Const., Declaration of Rights § 4; Idaho Const. art. 1, § 18; Ill. Const. art. 2, § 19; Ind. Const. art. 1, § 12; Kan. Const., Bill of Rights § 18; Ky. Const. § 14; La. Const. art. 1, § 6; Me. Const. art. 1, § 19; Md. Const., Declaration of Rights art. 19; Mass. Const. pt. 1, art. 11; Minn. Const.

traced the origin of this provision to Chapter 40 of the Magna Charta of 1215.[21] Despite this provision's ancient origins, little analysis has been made of either its scope or its fundamental purpose.[22] It does appear that the certain remedy provision of the Magna Charta had almost no impact on the English court system as a limitation on Parliament's power to legislate.[23] Despite its minimal impact in England, the certain remedy provisions of state constitutions have been used as a basis to challenge statutes of repose in state courts.

Several theories have evolved. One approach finds that the certain remedy provision applies only to vested rights. Under this theory, a statute of repose only bars suits filed a stated number of years after an event. While this period is open, there is a right to sue. Once the statutory period has expired there is no vested right to sue because the right to sue has been extinguished by the enactment of the statute of repose. Consequently, as to injuries arising after the period of repose, there is no vested right. One of the leading cases on the "vested rights" theory is *Freezer Storage, Inc. v. Armstrong Cork Co.*, 476 Pa. 270, 279–80, 382 A.2d 715, 720 (1978), where the Pennsylvania Supreme Court stated:

> "In interpreting this constitutional provision, we should remember that no one 'has a vested right in the continued existence of an immutable body of negligence law.... [T]he practical result of a [contrary] conclusion would be the stagnation of the law in the face of changing societal conditions.' *Singer v. Sheppard,* 464 Pa. 387, 399, 346 A.2d 897, 903

---

art. 1, § 8; Miss. Const. art. 3, § 24; Mo. Const. art. 1, § 14; Mont. Const. art. 3, § 6; Neb. Const. art. 1, § 13; N.H. Const. pt. 1, art. 14; N.C. Const. art. 1, § 35; N.D. Const. art. 1, § 22; Ohio Const. art. 1, § 16; Ore. Const. art. 1, § 10; Pa. Const. art. 1, § 11; R.I. Const. art. 1, § 5; S.C. Const. art. 1, § 15; S.D. Const. art. 6, § 20; Tenn. Const. art. 1, § 17; Tex. Const. art. 1, § 13; Utah Const. art. 1, § 11; Vt. Const. ch. 1, art. 4; W.Va. Const. art. 3, § 17; Wis. Const. art. 1, § 9; Wyo. Const. art. 1, § 8."

**21.** In Comment, *Section 13: Constitutional Armor for the Common Law*, 35 Ala.L.Rev. 127, 128 (1984), the following statement was made:

"So-called 'certain-remedy' provisions, such as that found in section 13, have their origin in the Magna Charta. In Chapter 40 of the 1215 document, King John promised that '[w]e will sell to no man, we will not deny or defer to any man either justice or right.' Sir Edward Coke concluded that these words meant that 'every subject of this realme, for injury done to him ... may take his remedy by the course of the law, and have justice, and right for the injury done to him, freely without sale, fully without any deniall, and speedily without delay.' The similarity between Coke's language and section 13 is obvious; in fact, it has been suggested that Coke is more directly responsible for the certain-remedy language in provisions such as section 13 than the text of the Magna Charta itself." (Footnotes omitted).

**22.** In I W. Holdsworth, *A History of English Laws* 58 (7th ed. 1956), the author states that this provision in the Magna Charta was primarily designed to prohibit the Crown from charging exorbitant fees for access to the courts. Another English commentator suggests that the

Magna Charta of 1215 had little practical effect on the English legal system of its day, and this is why it had to be frequently reconfirmed. 1 F. Pollock & F.W. Maitland, *The History of the English Law* 172–73 (2d ed. 1968). In note 2 of 8 *Halsbury's Laws of England* 521–22 (4th ed. 1974), the author makes this observation:

"Although the Magna Carta of Edward I (25 Edw. 1) (1297) and other constitutional documents of the same kind, such as the Petition of Right (1627) and the Bill of Rights (1688), are sometimes regarded in the light of a written constitution they are not complete, and are not immune from change by the ordinary process of legislation. 'Magna Carta has not remained untouched; and, like every other law of England, it is not condemned to that immunity from development or improvement which was attributed to the laws of the Medes and Persians': see *Chester v. Bateson* [1920] 1 KB 829 at 832, DC, per Darling J. Thus the Magna Carta of Edward I has, with the exception of cc. 1, 9, 29 and 37, been repealed by a long series of Acts[.]"

The lack of reference to the Magna Charta of 1215 is somewhat puzzling because, according to another English commentator, the "Magna Carta at once took the place, which it occupied right up to the eighteenth century, as the most important, the most fundamental part of the enacted law." II W. Holdsworth, *A History of English Laws* 218–19 (4th ed. 1936). *See generally* 18 Encyclopedia Americana 92–94 (1990).

**23.** According to 8 *Halsbury's Laws of England* at 531, the English "courts recognize no limit to Parliament's legislative power, and will not seriously entertain any attack on the validity of a public or private act. Moreover, there is no doubt that a statute can alter or abrogate rules

(1975)[.]" [24]

In *Lamb v. Wedgewood South Corp.*, 308 N.C. 419, 444, 302 S.E.2d 868, 882 (1983), the North Carolina Supreme Court adopted the vested rights approach and held that "since plaintiff's cause of action had not accrued at the time this legislation was passed, no vested right is involved." The court also found that its certain remedy provision gave the legislature authority to define the scope of the remedy.[25]

Another interpretation of this provision acknowledges that the legislature has the right to alter or abolish a common law right of action. Courts adhering to this view decline to use their state certain remedy provision to find statutes unconstitutional. As explained in *Olsen v. J.A. Freeman Co.*, 117 Idaho 706, 717, 791 P.2d 1285, 1296 (1990): "It is well established that the 'open courts' provision governing access to courts of justice does not prohibit the legislature from abolishing or modifying a common law right of action." (Citations omitted). *See also Klein v. Catalano, supra.*

Several other courts recognize that the legislature can place reasonable limits on the parties' rights to have their claims adjudicated in the courts. These courts, however, hold that since a statute of repose bars access to the courts after the specified period as to a cause of action arising after the limiting period, it violates their certain remedy provision. For example, in *Kennedy v. Cumberland Engineering Co., Inc.*, 471 A.2d 195, 198 (R.I.1984), the court

found a ten-year statute of repose on products liability actions unconstitutional:

"The total denial of access to the courts for adjudication of a claim even before it arises, however, most certainly 'flies in the face of the constitutional command found in art. 1, § 5,' *Lemoine v. Martineau*, 115 R.I. [233,] 240, 342 A.2d [616,] 621 [ (1975) ], and to hold otherwise would be to render this constitutional protection worthless. To prohibit court access absolutely for a generally recognized claim to a class of plaintiffs merely because they were injured by a product more than ten years old not only is irrational, in our opinion, but also flies in the face of even minimal constitutional protection mandated by art. I, sec. 5." [26]

*See also Overland Constr. Co., Inc. v. Sirmons*, 369 So.2d 572 (1979); *Health v. Sears, Roebuck & Co.*, 123 N.H. 512, 464 A.2d 288 (1983).

Finally, some courts, while recognizing the latitude of the legislature to enact legislation altering the common law, have held that the abolition or substantial impairment of an existing remedy may violate the state's certain remedy provision. However, if the legislation is designed to eliminate a clear social or economic evil and the elimination of the existing remedy is not an arbitrary means of achieving that goal, the statute will be found constitutional. This test was expressed in *Horton v. Goldminer's Daughter*, 785 P.2d 1087, 1093 (Utah 1989), *quoting Berry v. Beech Aircraft Corp.*, 717 P.2d 670, 680 (Utah 1985):

of common law or equity." (Footnotes omitted).

24. *Freezer Storage* is noted for this policy statement which has been quoted by several courts: "This Court would encroach upon the Legislature's ability to guide the development of the law if we invalidated legislation simply because the rule enacted by the Legislature rejects some cause of action currently preferred by the courts. To do so would be to place certain rules of the 'common law' and certain non-constitutional decisions of courts above all change except by constitutional amendment. Such a result would offend our notion of the checks and balances between the various branches of government, and of the flexibility required for the healthy growth of the law." 476 Pa. at 281, 382 A.2d at 721.

25. The statement in *Lamb,* 308 N.C. at 444, 302 S.E.2d at 882, was:

"The 'remedy' constitutionally guaranteed 'for an injury done' is qualified by the words 'by due course of law.' This means that the remedy constitutionally guaranteed must be one that is legally cognizable. The legislature has the power to define the circumstances under which a remedy is legally cognizable and those under which it is not."

However, the court cautioned: "We refrain from holding ... that the Legislature may constitutionally abolish altogether a common law cause of action." 308 N.C. at 444, 302 S.E.2d at 882.

26. In *Leeper v. Hillier Group, Architects Planners P.A., supra,* the Rhode Island Supreme Court

"In *Berry*, we rejected those approaches also and held that it would be an inexcusable enfeeblement of an express constitutional right to allow the abolition of an existing remedy necessary to secure an important constitutional right without providing an injured person 'an effective and reasonable alternative remedy,' unless there is 'a clear social or economic evil to be eliminated and the elimination of an existing legal remedy is not an arbitrary or unreasonable means of achieving the objective.'"

The Supreme Court of Alabama uses a similar test, but begins its analysis with a presumption that the statute is unconstitutional if it abolishes or alters a common law cause of action. This formulation was explained in *Lankford v. Sullivan, Long & Hagerty*, 416 So.2d 996, 1000 (Ala.1982), which quoted from a concurring opinion in *Fireman's Fund American Insurance Co. v. Coleman*, 394 So.2d 334, 352 (Ala.1980):

" 'Legislation which abolishes or alters a common-law cause of action, then, or its enforcement through legal process, is automatically suspect under § 13. It is not, however, automatically invalid. *Grantham, [v. Denke*, 359 So.2d 785 (Ala.1978) ], itself restates the established rule that such legislation will survive constitutional scrutiny if one of two conditions is satisfied:

"1. The right is voluntarily relinquished by its possessor in exchange for equivalent benefits or protection, *or*

"2. The legislation eradicates or ameliorates a perceived social evil and is thus a valid exercise of the police power.' "

(Emphasis in original).

Finally, one state court, Arizona, has concluded that the rights afforded in the state constitutional provisions involve fundamental rights. For example, Arizona has a

constitutional provision which it deemed more specific and stronger than most certain remedy provisions.[27] Another constitutional provision mentioned makes the "defense of contributory negligence or assumption of risk ..., in all cases whatsoever, be a question of fact and shall, at all times, be left to the jury."[28] Based on these provisions, the Supreme Court of Arizona in *Kenyon v. Hammer*, 142 Ariz. 69, 688 P.2d 961 (1984), found that a three-year statute of repose on medical malpractice claims would be analyzed on a strict scrutiny standard.

This survey provides a backdrop to analyze the certain remedy provision found in Article III, Section 17 of our Constitution. Our only case which mentions the certain remedy provision is *Wallace v. Wallace*, 155 W.Va. 569, 184 S.E.2d 327 (1971), *overruled on other grounds, Belcher v. Goins*, 184 W.Va. 395, 400 S.E.2d 830 (1990), where we upheld the right of the legislature to enact W.Va.Code, 56–3–2a, the statute abolishing the common law cause of action of breach of promise to marry and alienation of affections. After mentioning Article III, Section 17, we pointed out that there was no provision in our constitution that "guarantees the existence of [these] common law cause[s] of action[.]" 155 W.Va. at 579, 184 S.E.2d at 333.

In *Wallace*, we also referred to Article VIII, Section 13, which provides: "Except as otherwise provided in this article, such parts of the common law, and of the laws of this State as are in force on the effective date of this article and are not repugnant thereto, shall be and continue the law of this State until altered or repealed by the legislature."[29] We concluded by citing several cases where we recognized the right of the legislature to alter the common law and to act in an almost plenary fashion, so long as it did not violate the constitution.

upheld a statute of repose protecting builders and architects.

**27.** Article XVIII, Section 6 of the Arizona Constitution provides: "The right of action to recover damages for injuries shall never be abrogated, and the amount recovered shall not be subject to any statutory limitation."

**28.** Ariz. Const. art. XVIII, § 5.

**29.** In *Morningstar v. Black & Decker Manufacturing Co.*, 162 W.Va. 857, 253 S.E.2d 666 (1979), we discussed the historical origins of this constitutional provision and held that it did not restrict this Court's ability to alter the common law.

*E.g., State v. Farmers Coal Co.,* 130 W.Va. 1, 43 S.E.2d 625 (1947); *State Road Comm'n v. Kanawha County Court,* 112 W.Va. 98, 163 S.E. 815 (1932).

We decline to hold that the certain remedy provision in Article III, Section 17 of our Constitution has no meaning when it comes to legislative enactments. We begin with the premise that there is a presumption of constitutionality with regard to legislation.[30] However, when a legislative enactment either substantially impairs vested rights or severely limits existing procedural remedies permitting court adjudication of cases, then the certain remedy provision of Article III, Section 17 is implicated.

The term "vested right," as used in the certain remedy provision, means that an actual cause of action which was substantially affected existed at the time of the legislative enactment. The United States Supreme Court has acknowledged that an accrued cause of action is a vested property right and is protected by the guarantee of due process. *See Gibbes v. Zimmerman,* 290 U.S. 326, 54 S.Ct. 140, 78 L.Ed. 342 (1933). On the other hand, where the cause of action has not yet accrued, the Supreme Court has held that due process principles do not prevent the creation of new causes of action or the abolition of old ones to attain proper legislative objects. *See Silver v. Silver,* 280 U.S. 117, 50 S.Ct. 57, 74 L.Ed. 221 (1929). *See also Burmaster v. Gravity Drainage Dist. No. 2,* 366 So.2d 1381 (La.1978); *Lamb v. Wedgewood, supra.* Here, the cause of action had not accrued and, therefore, was not vested at the time the statute of repose limitation period ended.

The second inquiry is whether the enactment severely limits existing procedural rights. As earlier noted, a statute of repose does alter the traditional concept of a tort statute of limitations which begins to run when the injury occurs. In determining whether there has been a severe limitation, the inquiry is directed at the reasonableness of the time period imposed by the statute of repose, in this case ten years.

We follow much the same analysis that we made in the equal protection and due process discussion. The determination is whether there is a rational basis for the period imposed. We found this to have been met because the ten-year period seemed a reasonable term in view of an empirical study showing most case filings had occurred within this period. Consideration was also given to the fact that the longer the period, the more danger of loss of relevant evidence regarding the initial construction.

Consequently, we conclude that W.Va. Code, 55–2–6a, does not violate the certain remedy provision of Article III, Section 17. For all of the foregoing reasons, we answer the certified question in the negative, and find that W.Va.Code, 55–2–6a, is not unconstitutional.

The certified question having been answered, this case is ordered dismissed from the docket.

Certified question answered and dismissed.

---

30. *State ex rel. Frieson v. Isner,* 168 W.Va. 758, 285 S.E.2d 641 (1981); *State ex rel. Kanawha County Bldg. Comm'n v. Paterno,* 160 W.Va. 195, 233 S.E.2d 332 (1977).