Lauriat, J.
The plaintiff Freddie Mitchell (“Mitchell”) brought this negligence action against the defendants UIPE Products, Inc. (“UIPE”) and A.M. Kinney, Inc. (“Kinney”),[1] alleging that he was injured when he was struck by hot asphalt that blew out from piping designed by Kinney that was attached to a machine known as a “Seal Down Applicator Unit” (“seal-down applicator”) designed, manufactured and installed by UIPE in a manufacturing facility where Mitchell worked.
Kinney and UIPE have now moved separately for summary judgment against Mitchell, pursuant to Mass.R.Civ.P. 56, on the ground that Mitchell’s claims are barred by the six-year statute of repose established by G.L. c. 260, §2B. Kinney further contends that UIPE is not entitled either to indemnity or contribution from Kinney. Having concluded that the plaintiffs action is barred by G.L. c. 260, §2B, both defendants’ motions for summary judgment must be allowed.
BACKGROUND
In 1983, Mitchell’s employer, Bird, Inc., had installed in its manufacturing facility a production line (hereinafter “roofing line”) for the manufacture of asphalt roofing shingles. Incorporated in this roofing line was a machine known as a Seal Down Applicator Unit (“seal-down applicator”), which was designed, manufactured and sold to Bird by the defendant UIPE and attached to process piping, designed by the defendant Kinney. UIPE was not involved in the design or construction of the roofing line. The roofing line, including the seal-down applicator and the process piping, became operational by February 1985. OnMay21,1990, Mitchell was seriously burned by hot asphalt while he was cleaning solidified asphalt from the process piping attached to the sealdown applicator. Mitchell filed this action against UIPE on October 4,1991, asserting that UIPE negligently designed, manufactured and tested the Seal Down Applicator Unit, as well as failed to adequately warn against its dangers; that UIPE breached express and implied warranties; and that UIPE’s conduct constituted unfair and deceptive acts *542 or practices in violation of G.L. c. 93A, §§2 and 9. Mitchell amended his complaint on December 23, 1993, to assert similar claims against Kinney.
Both UIPE and Kinney have now moved separately for summary judgment against Mitchell on the basis of the Massachusetts statute of repose, G.L. c. 260, §2B, which provides as follows:
Action[s] of tort for damages arising out of any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property . . . shall be commenced only within three years after the cause of action accrues; provided, however, that in no event shall such actions be commenced more than six years after the earlier of the dates of: (1) the opening of the improvement to use; or (2) substantial completion of the improvement and the taking of possession or occupancy by the owner.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and the moving party is entitled to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l. Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and that the moving party is entitled to judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or by “demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, 404 Mass. at 17. “(T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” Lowland v. Eissner, 405 Mass. 207, 209 (1989).
In the present case, both UIPE and Kinney contend that Mitchell’s suit is barred by the statute of repose, G.L. c. 260, §2B, because Mitchell commenced this action more than six years after the seal-down applicator and process piping were installed and the roofing line became operational. The court agrees. “Whether a defendant’s activities fall within the statute is a question of law.” Snow v. Harnischfeger Corp., No. 93-1489, Slip op. at p. 8 (1st Cir., December 29, 1993). General Laws c. 260, §2B, “precludes recovery against those within the protection of the statute for any injury which occurs more than six years after the performance or furnishing of the design, planning, construction, or general administration of an improvement to real property. Simply put, after six years, the statute completely eliminates a cause of action against certain persons in the construction industry.” Klein v. Catalano, 386 Mass. 701, 702 (1982).
“(W]hen faced with the question of whether the defendant is entitled to repose under M.G.L. c. 260, §2B, the first question to be answered is ‘Is the defendant a protected actor under M.G.L. c. 260 §2B?’ ” Snow supra, at 17. ‘The purpose of the statute is to protect providers of ‘individual expertise’ who render particularized services for the design and construction of particular improvements to particular pieces of real property.” Id. at 12. “The statute does not name a class of protected actors, but instead extends protection to ‘those who commit any deficiency or neglect in the design, planning, construction or general administration of an improvement to real property.’ ” Id. For instance, “an actor such as a manufacturer or supplier may be protected if that actor becomes more than a ‘mere’ supplier by engaging in protected activities.” Id. at 13, citing McDonough v. Marr Scaffolding Co., 412 Mass. 636, 641-42 (1992) (manufacturer who designed bleacher units specifically for the rink in which they were installed by another is more than mere supplier and is entitled to benefit of statute). Hence, “application of the statute is necessarily dependent on the nature of the party’s activities.”[2] Snow supra, at 13. As stated by the First Circuit in Snow:
In considering whether an actor not clearly within the statute is entitled to repose, the court engages in a fact-based activities analysis. (Citation omitted.) The court must consider the motivation of the actor in producing the improvement. (Citation omitted.) If the actor designed the improvement for public sale or for general use, then the actor is not protected because the actor is.engaged in the activity of creating a fungible product. (Citation omitted.) If, however, the improvement is produced for a particular project and to the specifications of an architect or an engineer, M.G.L. c. 260, §2B may protect the actor as someone engaged in the activity of designing a particularized improvement.
Snow v. Harnischfeger Corp., No. 93-1489, Slip op. at 15-16, citing Dighton v. Federal Pacific Electric Co., 399 Mass. 687 (1987).
Here, UIPE claims the protection of G.L. c. 260, §2B by virtue of its design and manufacture of the seal-down applicator to specifications specifically requested by Mitchell’s employer, Bird, Inc. (“Bird”), and by shipping the seal-down applicator to Bird in February 1984. Mitchell does not dispute that UIPE designed the seal-down applicator. In fact, Mitchell’s amended complaint alleges that his injuries were due, in part, to UIPE’s negligence or recklessness in designing the seal-down applicator. Mitchell asserts, *543 however, that summary judgment is inappropriate because there is no evidence as to whether UIPE regularly manufactures seal-down applicators.
Whether UIPE regularly manufactures seal-down applicators is without significance here, for UIPE’s status as a designer of the seal-down applicator qualifies UIPE as a protected actor under G.L. c. 260, §2B, and would thus bar Mitchell’s claims if the seal-down applicator constitutes “an improvement to real property within the meaning of §2B.” McDonough, 412 Mass. at 641-42; Cournoyer v. Massachusetts Bay Transp. Auth,, 744 F.2d 208, 210 (1st Cir. 1984) (holding that under Klein v. Catalano, 386 Mass. 701 (1982), the applicability of §2B turns not on whether the improvement was prefabricated or mass produced, but whether the manufacturer relinquished control after designing, manufacturing and supplying the item). Similarly, Kinney’s status as a designer of the process piping qualifies Kinney as a protected actor under G.L. c. 260, §2B, and would likewise bar Mitchell’s claims if such piping constitute an “improvement to real property.” McDonough, 412 Mass. at 641-42. Hence, the only remaining question is whether the sealdown applicator and process piping constitute “improvements to real property” under G.L. c. 260, §2B.
Massachusetts courts have interpreted the phrase “improvement to real property” to mean “a permanent addition to or betterment of real property that enhances its capital value and that involves the expenditure of labor or money and is designed to make the property more useful or valuable as distinguished from ordinary repairs.” Conley v. Scott Products, Inc., 410 Mass. 645, 647 (1988) (quoting Webster’s Third New International Dictionary 1138 (1971)); see also Dighton, 399 Mass. at 697; Cournoyer, 744 F.2d at 210. Applying this definition, Massachusetts courts have held that foam insulation, bleachers, and hydraulic lifts constitute “improvements to real property” under §2B. See Conley, 401 Mass. at 647 (foam insulation); McDonough, 412 Mass. at 640 (bleachers); Ford v. Pizza Romano, Inc., 1 Mass. L. Rftr. No. 20, 412 (February 7, 1994) (Cratsley, J.) (hydraulic lift). And most notably, the First Circuit, construing Massachusetts law, has recently found the installation of overhead cranes in an engineering plant to constitute an “improvement” under G.L. c. 260, §2B. Snow supra.
Applying the above definition to the present case, the court concludes that both the seal-down applicator and process piping constitute “improvements to real property” under G.L. c. 260, §2B, because they are at least “betterments” that enhance both the usefulness and the value of the Bird manufacturing facility. Since Mitchell instituted this suit more than six years after the seal-down applicator and process piping were installed, and after the Bird manufacturing facility became operational, Mitchell’s tort claims are barred by G.L. c. 260, §2B. Further, because Mitchell’s warranty claims are identical to his tort claims, those claims are also barred by G.L. c. 260, §2B, for “(t]o hold otherwise would frustrate the purpose behind G.L. c. 260, §2B.” Klein, 386 Mass. at 719-20; see also McDonough, 412 Mass. at 642-43 (“(t]o allow the plaintiffs to recast their negligence claim in order to circumvent the operation of the repose statute would nullify the purpose of the repose statute altogether”). Finally, since G.L. 260, §2Bbars Mitchell’s claims against both UIPE and Kinney, Kinney’s motion for summary judgment as to the issue of indemnity or contribution has been rendered moot.
ORDER
For the foregoing reasons, the motions of UIPE Products, Inc. and A.M. Kinney, Inc. for summary judgment on the claims of Freddie Mitchell are ALLOWED.

 Freddie Mitchell originally filed his complaint against UIPE Products, Inc., who, in turn, impleaded AM. Kinney, Inc. as a third-party defendant pursuant to Mass.R.Civ.P. 14(a). Thereafter, Freddie Mitchell amended his complaint to assert claims directly against A.M. Kinney, Inc.

 Contrary to Mitchell’s contention, the applicability of G.L. c. 260, §2B is not dependent on the product’s status as a permanent fixture or a movable good. As stated by the First Circuit (following Massachusetts law):
The SJC has rejected adoption of a fixture analysis to determine applicability of the statute of repose, noting the statute “makes no reference to ‘fixtures,’ nor does it appear that the Legislature intended, by its choice of the common term ‘improvement,’ to subsume that tangle of highly technical meanings, often distinct in diverse legal contexts, which is the law of fixtures.”(Citation omitted.) The fact that a product is affixed, permanently or otherwise, neither makes the product an improvement nor turns the producer into a protected actor.
Snow v. Harnischfeger Corp., No. 93-1489, Slip op. atp. 11-12 (1st Cir. December 29, 1993).