HANLON, JUDGE:
Claimants are the owners of real property situate near Mountwood Park, Wood County. In 1960 they purchased a tract of approximately 18 acres and made improvements to a tavern on the property by converting it into a dwelling house. The house fronts on old U.S. Route 50 (hereinafter referred to as Route 50/41). In 1968 respondent condemned seven acres of claimants’ property situate on the southwesterly side of old Rt. 50 for the construction of new Route 50. This construction created an 85 foot fill bank across the old highway as well as Walker Creek which ran along the same in front of claimants’ house. During this construction, a large culvert was placed under the fill bank for Walker Creek to flow from the north side to the south side of the fill bank. On September 15, 1989, a flood occurred from Walker Creek onto claimants’ property. As a result, claimants’ residence and personal property sustained substantial damage. Claimants brought this action to recover $40,000.00 for these damages.
Claimants allege that the flood was caused by respondent’s negligent maintenance of the Walker Creek culvert. A large mound of dirt allegedly obstructed the inlet end of the culvert causing the water to back up the flood claimants’ property.
Respondent contends that the flooding resulted from a storm in excess of the amount required to cause a 50-year flood.[1] The culvert at issue is a seven foot culvert built to met the 1968 Interstate Standards, i.e., a 50-year storm. Respondent also contends that Mountwood Dam and Lake constructed on the south side of the fill bank by the U.S. Conservation Service, a federal agency, after new Route 50 was built contributed to the flooding. Weather Service records indicate that 3.6 to 3.8 inches of rain fell in Wood County on September 15, 1989, causing flooding in the general area of claimants’ property.
*99 Claimants’ property is located on the east side of Route 50/41 with Walker Creek meandering in a southerly direction along the west side of the road. The highway fill bank for new Route 50 is on the south side of claimants’ residence where it creates a dead end for Route 50/41 and, but for the culvert, a dam for Walker Creek. The Mountwood Park lake and the dam are located on the south side of the fill bank for Route 50. The outlet end of the culvert is approximately 1000 feet from the Mountwood Park lake.
Claimant had experienced flooding on their property on four prior occasions with the first flood occurring the 1971. None had occurred prior to the construction of the fill an culvert. During these floods the water came up to the foundation of claimants’ residence. On September 15, 1989, at 3:00 a.m. claimants were alerted by a neighbor about rising water. Claimants immediately fled their home with their son as it was already surrounded by water. Their home sustained extensive flood damage. They were unable to live in their house and had to rent another for ten months while theirs was repaired and made habitable again. According to the testimony of James C. Andrews, a real estate appraiser in Wood County, claimants’ property was worth $37,500.00 prior to the flood and nothing after. A repair estimate prepared and testified to by James P. Reese, Jr., was in the amount of $36,000. Testimony also indicated an alleged loss of personal property valued at approximately $6,715.00.
Harry W. Pitts, a registered professional engineer, testified that he examined the area surrounding claimants’ property, Walker Creek, as well as the culvert under Route 50. He determined from rainfall records that approximately three inches of rain fell in a 24 hour period during the flooding of September 15 to 16, 1989. It was his opinion that this rainfall would be in line with a 10-year flood. In his opinion the culvert, which measured 84 inches in diameter, should easily take the water flow of a 10 year storm. Mr. Pitts described a mound of earth that had built up in front of the mouth of the culvert approximately 12 inches from the mouth. The mound was described as being 3.2 feet high at its highest point and six feet in length. It was his opinion that this mound of earth obstructed the flow of Walker Creek into the culvert and caused the water to “churn” at the culvert’s mouth which in turn decreased the amount of water going into the culvert causing water to back up and flood the area of claimants’ home and property. At the time of the flood there was nothing in the culvert to obstruct the flow of water. He testified that in his opinion the capacity of the culvert was thus decreased by as much as 50% by the mound of dirt at the entrance to the culvert.
The Mountwood Park dam has a spill way in case water reaches the top of the dam. During this flood the water level reaches the top of the dam. During this flood the water level did not flow over the spillway. It was Mr. Pitts opinion that the level of water in the lake did not cause a back-up of water in the culvert nor did it contribute to the flooding of claimants’ property.
He further testified that the storm in question was not of the intensity of a 50-year storm inasmuch as 4.8 inches in 24 hour period would have been required for the same. The rainfall on this occasion of September 15, 1989, was recorded at 3.6 to 3.8 inches. Thus, a 50-year flood could not have occurred and the culvert should have handled the run-off in the stream. *100 However, the culvert did not handle the run-off because the mound of dirt and debris at the mouth of the culvert decreased its inlet capacity and, as a result, the flood on claimants’ property was the direct result of the mound of dirt at the mouth of the Walker Creek culvert.
G. R. Kalwar, a registered professional engineer for respondent and currently an external design engineer who originally took part in the design of the culvert for Walker Creek to pass through the fill bank for Route 50, was respondent’s primary expert witness. He explained that the requirements of the Federal Highway Administration for construction of Appalachian Corridors at the time required a review of 50-year storm conditions for culverts designed and constructed on such projects. The Walker Creek culvert was based upon the 50-year storm run-off calculations. Accordingly, an 84 inch diameter culvert was placed beneath the fill bank for Route 50. This culvert would accommodate a run-off from Walker Creek at the rate of 340 cubic feet of water per second. Kalwar testified that in his opinion the mound of dirt at the mouth of the culvert would not affect the ability of the culvert to handle 340 cubic feet of water per second from Walker Creek. He further stated that conditions known as ponding on the north side of Route 50 if a storm exceeding the intensity of a 50-year storm occurred.
The Court, having reviewed all of the evidence in this claim, makes the following findings of facts:
(1) The storm which occurred on September 15 and 16, 1989, was a cloudburst from which 3.6 to 3.8 inches of rain fell in a 24 hour period.
(2) The storm was not a 50-year storm as defined by the U.S. Weather Bureau standards for this area.
(3) However, the Court has determined that the effect of the storm was of the nature of a 50-year storm or more.
(4)The inlet end of the culvert on Walker Creek was obstructed by a mound of dirt which partially reduced the capacity of the culvert to accept water at a rate of 340 cubic feet per second.
(5) Mountwood Park Lake did not contribute to the flooding or ponding which occurred on the inlet end of the culvert.
(6) Claimants had experienced flooding on their property on four occasions prior to this flood and were aware of the existing obstruction in Walker Creek at the mouth of the culvert.
(7)However, claimants had not informed respondent of the condition of the mound at the mouth of the culvert on Walker Creek.
*101 (8) The construction of Route 50 which occurred more than 10 years prior to the flood which is the subject matter of this claim altered the run-off from Walker Creek by creating a large fill bank which in essence was a dam across Walker Creek with the site of claimants’ house and out-buildings being the low point most likely to flood should the culvert be obstructed.
In accordance with the facts in this claim the Court makes the following conclusions of law.
(1) The construction of new U.S. Route 50 having occurred more than 10 years prior to the occurrence of the flood, a claim based upon this construction is barred by W.Va. Code §55-2-6(1). See Gibson and Holcomb v. W. Va. Dept. of Highways, et. al., 185 W.Va.214, 406 S.E.2d 440 (1991).
(2) The respondent failed to maintain its culvert properly by allowing a mound of dirt to obstruct its inlet end thus reducing its capacity.
(3) The failure of respondent properly to maintain the area in front of the culvert in question constitutes negligence.
(4) Claimants must also bear some responsibility for the flood for failing to notify respondent of the obstruction in Walker Creek.
(5) Accordingly, the Court will assess responsibility for claimants’ damages from the flood as 60% on the part of the respondent and 40% on the part of the claimants.
DAMAGES
Claimants’ damages to their dwelling were estimated by James C. Andrews at $37,500.00 based upon a sales comparison analysis wherein the land was valued at $8,500.00 and the house at $29,000.00. The Court is of the opinion that claimants are entitled to an award of $17,400.00 for the damages to their home. As to the personal property damaged or lost during the flood, the Court has reviewed the evidence and is of the opinion that much of the claimants’ damages are speculative in nature. The Court has determined that the value of the personal property lost was in the amount of $4,500.00. Therefore, the Court makes an award in the amount of 42700.00 for the personalty. The Court denies any recovery for rent expenses alleged to have been incurred by the claimants or for the monetary value of the donations by the American Red Cross. The uncontroverted evidence advanced at the hearing is that the American Red Cross makes donations to flood victims with no expectation of their being required to repay the same.
In accordance with the foregoing, the Court makes a total award of $20,100.00 to the claimants.
Award of $20,100.00.

 A 50-year storm or 50-year rainfall means that once in 50 years, maybe twice in 100 years, maybe four times in 200 years, rainfall intensity will either be of that magnitude or will exceed that magnitude.