664 S.E.2d 721

Jerry NEAL and Karen Neal, Plaintiffs Below, Appellants,

v.

J.D. MARION, David Jordan, Beverly Jordan, Sandy Kessell, Lombardo Realty Company n/k/a New Millennium Corporation, and The City of Charleston, Defendants Below, Appellees.

No. 33520.

Supreme Court of Appeals of West Virginia.

Submitted Feb. 26, 2008.

Decided June 18, 2008.

David L. Grubb, Cameron S. McKinney, The Grubb Law Group, Charleston, WV, for Appellants.

Josef A. Horter, H. Jerome Sparks, Hendrickson & Long, PLLC, for Appellee J.D. Marion.

BENJAMIN, Justice.

The instant appeal arises from the Circuit Court of Kanawha County's application of the West Virginia Architect and Builder's Statute of Repose, W. Va.Code § 55–2–6a (1983),[1] to dismiss, upon a motion for summary judgment all claims asserted by appellants Jerry Neal and Karen Neal (hereinafter collectively referred to as "the Neals") against appellee J.D. Marion (hereinafter "Marion") in this civil lawsuit. In the underlying action, the Neals, subsequent purchasers of a home constructed by Marion, asserted various claims against Marion, including claims arising from the alleged concealment of construction defects and fraudulent misrepresentations regarding the same.[2] The circuit court dismissed all claims asserted against Marion upon finding that the action had been filed more than ten years after construction was complete. Upon considered review of the record, argument of the parties and applicable law, we reverse the circuit court's decision and remand this matter for further proceedings.

I.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellee Marion constructed a home located at 522 Woodbridge Drive, Charleston, West Virginia, which, upon completion of construction, was purchased by appellees David and Beverly Jordan (hereinafter "the Jordans") on February 23, 1994. During the summer of 1996, the Neals entered into negotiations for the purchase of the home.[3] In their complaint, which was filed on October 1, 2004, the Neals allege that Marion actively participated in the negotiations for this sale, including representing that there were no problems with the foundation and that all prior repairs had been disclosed. Further, Marion agreed to provide a warranty for future repairs which may become necessary should the Neals purchase the home.[4] On

---

1. The statutory text is set forth *infra*.

2. The only claims at issue in the instant appeal are those asserted against Marion.

3. Appellees Sandy Kessell and Lombardo Realty, n/k/a New Millennium Corporation were real estate brokers involved in the negotiation and sale of the property.

4. Due to the limited record created below, the factual representations contained herein are taken from the Neals' complaint and the parties' briefs. The circuit court dismissed the Neals' claims against Marion based solely upon the date on which construction was complete in comparison to the date the complaint was filed. Upon remand, the factual representations contained herein may be subject to dispute by the parties

August 8, 1996, the Neals purchased the subject home. Consistent with representations made during the negotiation process, Marion made several undisclosed additional repairs subsequent to the Neals' purchase of the home.

Between October 2002 and May 2003, professional engineers inspected the Woodbridge Road property on three occasions.[5] As a result, a report was issued opining that the foundation was severely flawed, unsafe and inadequate for the home's design and location. Additionally, the report indicated that the foundation had undergone prior, substandard repairs that had been actively concealed by "walling in" and "covering up" large portions of the foundation such that a routine home inspection would not uncover the work.

On October 1, 2004, the Neals filed a six count complaint[6] against the various defendants. In the complaint, the Neals summarized their allegations stating:

Plaintiffs allege that the home constructed by Defendant Marion was not constructed as expressly or impliedly warranted at the time the home was sold. Plaintiffs further allege that Defendants: (1) fraudulently and materially misrepresented the condition and quality of the home and the nature and extent of prior repairs to the home; (2) subsequently refused to remedy the problems and/or cancel the contract when requested by Plaintiffs; (3) took deliberate action to actively conceal the defective construction so that it would not be discovered through a reasonable inspection; (4) committed a series of unfair or deceptive acts or practices; and (5) otherwise violated the law[.]

With respect to Marion, the Neals' complaint specifically alleged that he: expressly and impliedly warranted the quality, safety, and workmanship of the home's construction; performed several repairs to the home after the sale to the Jordans pursuant to the warranties; concealed or failed to disclose prior repairs to the Neals prior to the sale; expressly warranted the quality, safety, and workmanship of the home's construction to the Neals at the time the Neals were considering and negotiating the purchase of the home; and promised to make repairs if the Neals purchased the home.[7]

In January 2006, Marion filed a motion for summary judgment arguing that W. Va.Code § 55-2-6a barred the Neals' claims against him because the complaint was filed more than ten (10) years after construction was complete and their complaint alleges "that the design and/or construction of the house's foundation was flawed." In response, the Neals set forth their allegations regarding representations about prior repairs and the condition of the foundation made by Marion on August 8, 1996, during the negotiations for their purchase of the home. Additionally, the Neals provided the circuit court with their engineers' report and Marion's discovery responses. The Neals argued that their allegations of fraudulent concealment and misrepresentation and Marion's 1996 representations precluded summary judgment.

The circuit court ruled on Marion's motion prior to the scheduled hearing on the matter and dismissed the Neals' claims against Marion. The entirety of the circuit court's order states:

FILED AND PENDING before this Court is "J.D. Marion's Motion for Summary Judgment." After having reviewed and considered Defendant Marion's motion for summary judgment and memorandum in support thereof, and "Plaintiff's [sic] Memorandum of Law in Opposition to Defendant J.D. Marion's Motion for Summary Judgment," this Court makes the following

---

and, if so, should ultimately be resolved by the trier of fact.

**5.** The Neals represent in their brief to this Court that the problems were first discovered in 2002 when they undertook to remodel the home's basement.

**6.** Included in the complaint were counts for breach of express warranties, breach of implied

warranty of habitability, common law fraud and misrepresentation, statutory unfair or deceptive acts or practices, fraudulent or negligent inspection and certification, and civil conspiracy.

**7.** The Neals represent that Marion did, in fact, perform work pursuant to this representation after they purchased the home.

**FINDINGS OF FACT and CONCLUSIONS OF LAW:**

1) There is no genuine issue of material fact that the Defendant, J.D. Marion constructed the house located at 522 Woodbridge Drive in Charleston, West Virginia, prior to February 23rd, 1994.

2) The Complaint herein was filed on October 1st, 2004.

3) The Plaintiffs' claims against Defendant Marion are time barred pursuant to *West Virginia Code* § 55–2–6a.

WHEREFORE, for the foregoing reasons, it is **ORDERED, ADJUDGED and DECREED** that Defendant Marion's motion for summary judgment is granted and all of the Plaintiff's claims against Defendant Marion are dismissed, with prejudice, preserving the Plaintiffs' objections for the record.

The Neals timely filed a motion to alter or amend the summary judgment order, pursuant to Rule 59(e) of the *West Virginia Rules of Civil Procedure* arguing that their claims based upon fraud and misrepresentations during the negotiations for their purchase of the property were not subject to the provisions of W. Va.Code § 55–2–6a. The Neals' Rule 59 motion was summarily denied and this appeal follows.

## II.

### STANDARD OF REVIEW

 The instant appeal presents itself to this Court upon the circuit court's denial of the Neals' Rule 59(e) motion to alter or amend the circuit court's summary judgment order invoking W. Va.Code § 55–2–6a to dismiss their claims asserted against Marion. We have previously held that "[t]he standard of review applicable to an appeal from a motion to alter or amend a judgment, made pursuant to W. Va. R. Civ. P. 59(e), is the same standard that would apply to the underlying judgment upon which the motion is based and from which the appeal to this Court is filed." Syl. pt. 1, *Wickland v. American Travellers Life Insurance Company*, 204 W.Va. 430, 513 S.E.2d 657 (1998). It is well settled in this jurisdiction that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994). Our review of the circuit court's application of W.Va.Code § 55–2–6a in this matter is likewise *de novo.* Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). Thus, we are afforded plenary review of matters raised in the instant appeal.

## III.

### DISCUSSION

Appellants' primary argument on appeal is that the circuit court erred by finding that W. Va.Code § 55–2–6a barred their claims asserted against Marion, but particularly their fraud, material misrepresentation and conspiracy claims.[8] Marion responds that the circuit court did not err in its application of W. Va.Code § 55–2–6a to dismiss all claims. According to Marion, only the date upon which the home's construction was completed and the date upon which the complaint was filed are relevant because W. Va.Code § 55–2–6a precludes any tort or contract claim not filed within 10 years of the completion of construction according to this Court's decision in *Shirkey v. Mackey*, 184 W.Va. 157, 399 S.E.2d 868 (1990). The Neals counter that their fraud and misrepresentation claims arise from separate acts which are distinct from the original construction. Fairly articulated, the Neals' argument is that the date on which construction is complete is the relevant or dispositive factor for applica-

---

8. The appellants articulate four separate, but interrelated, arguments on appeal: 1) the circuit court erred by applying W. Va.Code § 55–2–6a to their fraud and civil conspiracy claims; 2) the circuit court erred by refusing to acknowledge that the doctrine of equitable estoppel saves their claims due to the alleged fraudulent concealment and misrepresentations; 3) the circuit court erred by failing to view facts in light most favorable to appellants; and 4) the circuit court erred in not setting forth sufficient findings of fact and conclusions of law. Each, however, involves the circuit court's the application of W. Va.Code § 55–2–6a, which we deem to be the dispositive issue herein.

tion of W. Va.Code § 55–2–6a in those instances where the condition of the original design or construction has not been altered or fraudulently misrepresented subsequent to completion of construction. However, they contend subsequent acts which alter, conceal or misrepresent the condition of the original construction operate start the statute's time limits anew. We agree with this argument.

West Virginia Code § 55–2–6a provides:

No action, whether in contract or in tort, for indemnity or otherwise, nor any action for contribution or indemnity to recover damages for any deficiency in the planning, design, surveying, observation or supervision of any construction or the actual construction of any improvement to real property, or, to recover damages for any injury to real or personal property, or, for an injury to a person or for bodily injury or wrongful death arising out of the defective or unsafe condition of any improvement to real property, may be brought more than ten years after the performance or furnishing of such services or construction: Provided, That the above period shall be tolled according to the provisions of section twenty-one of this article. The period of limitation provided in this section shall not commence until the improvement to the real property in question has been occupied or accepted by the owner of the real property, whichever occurs first.

This Court has discussed this statute in depth on three previous occasions which are relevant to the instant analysis. In both *Gibson v. West Virginia Department of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991), and *Shirkey v. Mackey*, 184 W.Va. 157, 399 S.E.2d 868 (1990), we addressed the time bar created by this statute of repose. In the third, *Stone v. United Engineering, a Division of Wean, Incorporated*, 197 W.Va. 347, 475 S.E.2d 439 (1996), we considered what constitutes an "improvement" under the statute and found that the statute did not apply to preclude suit against the owner of property who also designed the improvement allegedly causing the injury at issue.

The constitutionality of W. Va.Code § 55–2–6a was upheld in *Gibson v. West Virginia*

*Department of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991). Therein, we explained the purpose and scope of the statute stating:

The purpose of this type of statute of repose is to protect architects and builders from the increased exposure to liability as a result of the demise of the privity of contract defense. Without a statute of repose, a party injured because of a latent design or defect could sue an architect or builder many years after a construction project was completed. This could result in stale claims with a distinct possibility of loss of relevant evidence and witnesses.

Because architects and builders were the ones primarily exposed to increased liability when privity of contract was abolished, we cannot fault our legislature for protecting this group. Furthermore, our statute is not so narrowly drawn as some in other jurisdictions. W. Va.Code, 55–2–6a, has a ten-year limitation and bars recovery in three general areas. The first relates to damages "for any deficiency in the planning, design, surveying, observation or supervision of any construction[.]" The second involves damages arising from "the actual construction of any improvement to real property [.]" The third area is "for an injury to a person or for bodily injury or wrongful death arising out of the defective or unsafe condition of any improvement to real property[.]"

*Gibson*, 185 W.Va. at 220, 406 S.E.2d at 446. Accordingly, we held "W. Va.Code, 55–2–6a, limits the time period in which a suit may be filed for deficiencies in the planning, design, or supervision of construction of an improvement to real property to ten years." Syl. pt. 1, in part. *Id.*

Marion relies heavily upon *Shirkey v. Mackey*, 184 W. Va. 157, 399 S.E.2d 868 (1990), in his argument that the circuit court's order should be affirmed. In *Shirkey*, this Court declined to apply the discovery rule to permit a claim arising from an alleged latent defect in the construction of a home, *i.e.*, construction on improperly compacted organic fill material resulting in property damage due to settling, to proceed where it was filed twelve years after construction was complete. In *Shirkey*, the

homeowners allegedly did not discover the defect until twelve years after the construction was completed and filed suit shortly thereafter. In rejecting the homeowners' argument that to apply W. Va.Code § 55–2–6a to bar their claim would leave them without remedy, the Court noted that to apply the discovery rule under the facts of the case "would negate the entire purpose" of the statute. *Shirkey*, 184 W.Va. at 159, 399 S.E.2d at 870. Thus, the Court held in the sole syllabus point that "West Virginia Code § 55–2–6a (1983) sets an arbitrary time period after which no actions, whether contract or tort, may be initiated against architects and builders. Pre-existing statutes of limitation for both contract and tort actions continue to operate within this outside limit." *Id.* Marion argues that this syllabus point clearly indicates that *any* tort or contract action related to the construction of a home is barred by W. Va.Code § 55–2–6a if filed more than ten years after the original construction is complete. The Neals counter that the statute is not so broad, that the statutory language itself limits its application to claims for "any deficiency in the planning, design, surveying, observation or supervision of any construction or the actual construction" of an improvement and that *Shirkey* should be modified to reflect such limitation.

█ Our review of *Shirkey* reveals that its sole syllabus point omits a key limitation on the scope of W. Va.Code § 55–2–6a, *i.e.*, the statutory language that only actions seeking damages for deficiencies in the construction of the improvement at issue, whether its planning, design or actual construction, are subject to the statutory time bar. The omitted statutory language directly relates the triggering of the statute to the alleged deficiency at issue. "A cardinal rule of statutory construction is that significance and effect must, if possible, be given to every section, clause, word or part of the statute." Syllabus Point 3, *Meadows v. Wal–Mart Stores, Inc.*, 207 W.Va. 203, 530 S.E.2d 676 (1999). It has long been held that "[i]n ascertaining legislative intent, effect must be given to each part of a statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2, *Smith v. State Workmen's Compensation Com'r*, 159

W.Va. 108, 219 S.E.2d 361 (1975). *See also, State ex rel. Johnson v. Robinson*, 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979) (recognizing the presumption that the Legislature intends "that every word used in a statute has a specific purpose and meaning."). This omission in *Shirkey*, we believe, contributed to the circuit court's erroneous ruling as it implies the scope of W. Va.Code § 55–2–6a is broader than the intent indicated by the statutory language itself. The omitted phrase limiting the scope of the statute to actions seeking "damages for any deficiency in the planning, design, surveying, observation or supervision of any construction or the actual construction of any improvement to real property" is significant in that it demonstrates legislative intent regarding the statutory scope, This phrase links the application of the statute to the act alleged to be deficient or improper. So, for example, if a home was constructed and three years after the home was occupied work was performed on the foundation that is proven to be improper, deficient or inadequate, the statute would not begin to run from the date of original construction but from the date on which the allegedly improper, deficient or inadequate work on the foundation was complete. The reason for this is because it is the second act which is at issue, not the original construction.

█ Unlike *Shirkey*, the instant matter involves allegations that the original builder, Marion, performed subsequent work on the home *after* the original construction had been completed. There is evidence that defects in the original foundation were repaired, repaired inadequately, and concealed. However, there is no evidence as to when these repairs and the alleged "walling in" occurred. If this foundation work and "walling in" occurred *after* October 1, 1994, W. Va.Code § 55–2–6a would not operate to bar the Neals claim because that is the relevant date—the date on which the improvement at issue was completed. The subsequent work operates to start W. Va.Code § 55–2–6a's time limitation anew for claims related to that subsequent work. As we stated in *Gibson*, the purpose of this statute is to protect architects and builders from claims asserted

many years after construction is complete. *Gibson*, 185 W.Va. at 220, 406 S.E.2d at 446. We also stated in *Stone* that the "general purpose of statutes of repose [like W. Va. Code § 55–2–6a], including the legislative intention [is] 'to protect architects, builders and the like who have completed their jobs and *who have relinquished access and control of the improvements.*' " *Stone*, 197 W.Va. at 355, 475 S.E.2d at 447, quoting, *West End Corp. v. Royals*, 450 So.2d 420, 424 (Miss. 1984). In *Stone* we recognized that whether something constitutes an "improvement" for purposes of W. Va.Code § 55–6–2a is a legal determination requiring a common sense approach. *Stone*, 197 W.Va. at 357, 475 S.E.2d at 449. Whether the item enhances the value of the real property and the level of its integration to the real property itself are factors to be considered. *Id.* at 358, 475 S.E.2d at 450. Applying a common sense approach, we find that a subsequent act which modifies or repairs the original design or construction of real property constitutes an "improvement" to the original construction for purposes of W. Va.Code § 55–2–6a.[9] The purpose of this statute is not, in our opinion, to protect a builder from claims arising from actions taken *after* the completion of the original construction to conceal or inadequately repair problems with the original design or construction. So long as those claims are filed within ten years after the last action taken by the builder on the improvement at issue, the statutory purpose is fulfilled.

■■■■■ Accordingly, we now hold that West Virginia Code § 55–2–6a (1983) sets an arbitrary time period after which no actions, whether contract or tort, seeking damages for any deficiency in the planning, design, surveying, observation or supervision of any construction or the actual construction of any improvement to real property may be initiated against architects and builders. This arbitrary time limit begins to run when the builder or architect relinquishes access and control over the construction or improvement *and* the construction or improvement is (1) occupied or (2) accepted by the owner of the real property, whichever occurs first.' Pre-existing statutes of limitation for both contract and tort actions continue to operate within this outside limit. To the extent this Court's decisions in *Shirkey v. Mackey*, 184 W. Va. 157, 399 S.E.2d 868 (1990), and *Gibson v. West Virginia Department of Highways*, 185 W.Va. 214, 406 S.E.2d 440 (1991), indicate otherwise, they are hereby modified.

■■■■ With respect to the Neals' claims arising from alleged deficiencies in the design or construction of the foundation, the relevant date for purposes of triggering W. Va.Code § 55–2–6a is the last date upon which Marion performed work which altered the original design or construction of the foundation and such work was accepted by the property owners, either the Jordans or the Neals. To be clear, this is not a situation where the original builder or architect relinquished access and control of the construction upon completion of the original construction.[10] Herein, Marion remained actively involved, including returning to the home after it was occupied by the owners to allegedly perform alterations to the original design and/or construction. Should it be determined that the "walling in" and repairs to the foundation occurred after October 1, 1994, the Neals' claims relating to the same would be timely filed under W. Va.Code § 55–2–6a. Accordingly, the circuit court's decision to dismiss the Neals' claims arising from Marion's actions in repairing, altering or walling in the foundation to conceal its defective nature must be reversed and this matter is remanded for a determination as to

**9.** In syllabus point 1 of *Gibson,* this Court held: "W. Va.Code, 55–2–6a, limits the time period in which a suit may be filed for deficiencies in the planning, design, or supervision of construction of an improvement to real property to ten years. This period commences on the date the improvement is occupied or accepted by the owner of the real property, whichever occurs first." Implicit in this finding is an understanding that the architect or builder has relinquished control of the construction or improvement to the owner and has ceased work thereon.

**10.** Nor is this a situation where someone other than the original builder performed the subsequent work. In such an instance, the statute of repose would begin to run as to the original builder from the date upon which construction was completed and the property accepted or occupied by the owner.

when these actions occurred. If such actions occurred after October 1, 1994, W. Va.Code § 55–2–6a does not operate to bar such claims.

 The circuit court likewise erred in applying W. Va.Code § 55–2–6a to bar the Neals' claims of fraud, misrepresentation and civil conspiracy arising from Marion's representations made during the negotiations for the Neals' purchase of the property. There is a fundamental distinction between defects in the design or construction of the foundation and affirmative misrepresentations regarding the condition thereof and/or prior repairs thereto. Where there is a demonstrated reliance upon an affirmative misrepresentation to act in a certain manner, the damages arise not from the subject matter of the misrepresentation, here the foundation problems, but from the misrepresentation itself. Stated another way, the claimed damages arise not from the alleged problems with the foundation but from being induced to act by a false representation that there were no undisclosed prior repairs to or problems with the foundation. The alleged misrepresentations and any damages arising therefrom are not subject to the provisions of W. Va.Code § 55–2–6a. This statute governs only the alleged defects themselves, not claims arising from a representation that there were no defects or knowingly concealing the extent of the defects or prior repairs. Similarly, to the extent the Neals' claims for unfair or deceptive acts or practices arise from Marion's actions and representations during the sale negotiations, the claims are not subject to W. Va.Code § 55–2–6a and the circuit court erred by invoking the same to dismiss those claims. Accordingly, the circuit court's order relying upon W. Va.Code § 55–2–6a to dismiss the Neals' claims of fraud, misrepresentation, civil conspiracy and unfair or deceptive acts or practices is reversed and the claims are remanded for further proceedings.

## IV.

## CONCLUSION

The Circuit Court of Kanawha County's October 30, 2006, order denying Appellants'

Rule 59(e) motion and its October 6, 2006, summary judgment order are reversed, for the reasons set forth herein, and this matter is remanded for further proceedings.

Reversed and Remanded