WALKER, Chief Justice:
Petitioners Ben and Diane Goldstein sued Respondents Peacemaker National Training Center, LLC, and its related entity, Peacemaker Properties, LLC, for nuisance in 2015. The Petitioners own land in Frederick County, Virginia, and they claim that noise from Respondents' nearby shooting ranges substantially and unreasonably interferes with their use and enjoyment of their rural property.
In 2017, the West Virginia Legislature amended West Virginia Code § 61-6-23 (2014) to bar nuisance claims against a shooting range if the shooting range is in compliance with local noise ordinances. The Legislature specified that that amendment applied *340 retroactively. Based upon that statutory amendment and Berkeley County's noise ordinance, the circuit court concluded that Petitioners' nuisance claim was retroactively barred, granted Respondents summary judgment, and dismissed Petitioners' suit. Petitioners now appeal that order, along with the circuit court's order denying their petition for attorneys' fees and costs under West Virginia Rule of Civil Procedure 37 and motion for additional sanctions due to Respondents' alleged discovery misconduct.
We find that the circuit court correctly applied the 2017 amendment to West Virginia Code § 61-6-23 to dismiss, retroactively, Petitioners' nuisance claim seeking injunctive relief because Berkeley County's noise ordinance specifically exempts shooting ranges, such as Respondents', from complying with its limitations. But, because Petitioners' plea for money damages accrued prior to the 2017 amendment of § 61-6-23, Petitioners' right to pursue those damages was vested and the Legislature could not retroactively bar Petitioners from pursuing their nuisance claim for money damages. So, we reverse that part of the circuit court's order granting summary judgment to Respondents on Petitioners' nuisance claim for money damages and we remand the matter back to the circuit court for further proceedings. Finally, we find that the circuit court did not abuse its discretion by denying Petitioners' petition for attorneys' fees and costs and motion for additional sanctions for litigation misconduct, and we affirm the circuit court's order denying that petition and motion.[1]
I. FACTS AND PROCEDURAL HISTORY
We present the facts and procedural history of this case in two parts. First, we address the allegations giving rise to Petitioners' nuisance complaint, Respondents' motion for summary judgment, and the circuit court's order granting that motion. Second, we address the parties' lengthy discovery dispute leading to the circuit court's denial of Petitioners' petition for attorneys' fees and costs (fee petition) and motion for additional sanctions for litigation misconduct.
A. Respondents' motion for summary judgment.
Petitioners bought property in rural Frederick County, Virginia, in 1976. They designed and built a home on the land, and from 1983 until 2010, Mr. Goldstein commuted from the property to Washington, D.C., for work. Respondent Peacemaker Properties, LLC (Peacemaker Properties) owns a 501-acre parcel of land near Petitioners' property, straddling the Berkley County, West Virginia, and Frederick County, Virginia, line. In 2011, Peacemaker National Training Center (the Training Center), a large complex of shooting ranges, commenced operations on Peacemaker Properties' land.[2] Peacemaker National Training Center, LLC (Training Center LLC) operates the Training Center.
Petitioners filed a verified, nuisance complaint against Peacemaker Properties and the Training Center (collectively, Respondents) in the Circuit Court of Berkeley County in September 2015. Petitioners alleged that before operations at the Training Center commenced, Respondents' manager, Cole McCulloch (McCulloch) made representations regarding its hours of operation and the noise that activities at Respondents' range would generate. Petitioners further alleged that, after commencing operations, shooting at the Training Center frequently occurred outside of its set hours of operation and in excess of the noise levels promised by McCulloch. These conditions, Petitioners alleged, substantially and unreasonably interfered with their use and enjoyment of their nearby property.
*341 For relief, Petitioners sought a temporary and permanent injunction from the circuit court to impose specific hours of operation and maximum noise levels upon Respondents. Should Respondents deviate from those prescriptions, Petitioners further asked that the circuit court require them (1) to implement noise abatement measures on Peacemaker Properties' land, or (2) in the event those abatement measures were unsuccessful, to compensate Petitioners for the cost of noise abatement measures on their own property "and any other damages permitted by West Virginia law and supported by the evidence." Petitioners also prayed for "such other legal and equitable relief as the [circuit court] shall deem just and proper under the circumstances."
On June 24, 2017, Respondents filed a four-page motion for summary judgment with supporting memorandum of law, in which they argued that amendments to West Virginia Code § 61-6-23 enacted in 2017 retroactively "prohibit[ed] nuisance actions against gun ranges." Specifically, Respondents argued that subsections (e) and (f) of § 61-6-23, enacted in 2017, operated in combination with Berkeley County's noise ordinance to bar Petitioners' suit. The circuit court agreed, and, on August 11, 2017, entered an order granting summary judgment to Respondents and dismissing Petitioners' complaint with prejudice. Petitioners now appeal from that final order.
B. Petitioners' Fee Petition and Motion for Additional Sanctions for Litigation Misconduct.
Petitioners served discovery on Respondents on April 1, 2016, approximately six months after filing their verified complaint. Importantly, in that discovery, Petitioners requested that Respondents produce all documents in their possession or control identifying each person, organization, or entity that had used the ranges at the Training Center for approximately the previous ten years (requests for production 23 and 24). After receiving Respondents' responses[3] and objections, and an unsuccessful "meet and confer," Petitioners filed their First Motion to Compel in July 2016, seeking from Respondents complete responses to numerous interrogatories and requests for production, including requests for production 23 and 24. The circuit court referred Petitioners' motion to compel to a discovery commissioner, who conducted a lengthy hearing on September 2, 2016.
On September 30, 2016, the discovery commissioner issued a recommended order granting-in-part and denying-in-part Petitioners' motion to compel. As for requests for production 23 and 24, the recommended order directed Respondents to produce responsive information subject to a protective order. Also in the recommended order, the discovery commissioner concluded that Petitioners had "substantially prevailed" and gave Petitioners leave to petition for attorneys' fees and expenses pursuant to West Virginia Rule of Civil Procedure 37(a)(4). Petitioners filed their first fee petition on December 12, 2016.
Respondents filed exceptions and objections to the discovery commissioner's recommended order on October 14, 2016, arguing that the identity of their patrons was not relevant to Petitioners' nuisance claim; that their customer list was proprietary and confidential information; and, that "some military groups that use [Respondents'] ranges forbid the disclosure of member information." In November 2016, the circuit court overruled Respondents' objections, adopted the discovery commissioner's recommended order, in full, and entered the discovery commissioner's recommended protective order.
Respondents then moved the circuit court to reconsider and stay its November 2016 order. With regard to requests for production 23 and 24, Respondents again argued that their client information was proprietary and beyond the scope of discovery. They also claimed that disclosure of this information could violate state and federal law pertaining to concealed carry permits and firearm sales and infringe upon those range users' right to *342 freely associate and to keep and bear arms under the First and Second Amendments to the United States Constitution, respectively. In January 2017, the circuit court denied Respondents' motion for reconsideration and ordered Respondents to produce the requested information under the previously entered protective order. Respondents made their business records available to the Petitioners on March 22, 23, 29, 31, and April 7, 2017.
On March 15, 2017, the West Virginia Citizens Defense League (CDL), Dominic Applegate (Applegate), and Keith Morgan (Morgan) served a motion to intervene[4] in this matter to "prevent the disclosure of information relating to [Respondents'] members and guests[.]" On March 17, 2017, Respondents posted a statement to their website regarding the circuit court's order granting Petitioners' motion to compel and identified the information that Respondents were obligated to produce to Petitioners under the court's November 2016 order. Supplemental motions to intervene from more of Respondents' clients followed on March 24 and 31, 2017, posing the same grounds for intervention as stated in CDL, Applegate, and Morgan's motion.
The circuit court held a Pitrolo[5] hearing on Petitioners' fee petition on March 20, 2017, during which Respondents argued that a fee award was not mandatory under Rule 37(a)(4)(A). Then, on April 4, 2017, presiding Judge Gray Silver III recused himself from the case after receiving a voicemail and viewing an internet posting that he perceived as "part of an effort in support of the [Respondents] to intimidate [the circuit court] to rule for the [Respondents] on at least the pending motions, and to reconsider prior rulings in favor of the [Petitioners], and to threaten the Court to do so." Judge Silver transferred the case to Judge Christopher C. Wilkes, who presided over the remainder of the proceedings, below.
On May 19, 2017, Petitioners submitted a supplemental brief in support of their fee petition and a new motion for additional sanctions for litigation misconduct, seeking entry of a default judgment in their favor. Petitioners alleged that Respondents' March 17 internet posting was designed to incite their clients and supporters to harass and threaten the court, Petitioners, and their counsel, and argued that the circuit court should impose harsh sanctions for such conduct. On August 9, 2017, Judge Wilkes denied Petitioners' pending fee petition and motion for additional sanctions for litigation misconduct by order, finding that Respondents had presented a "legitimate" discovery dispute that did not merit fee-shifting as a sanction pursuant to Rule 37(a)(4)(A).
II. ANALYSIS
As in the preceding section, we address Petitioners' arguments in two parts. First, we analyze their challenge to the circuit court's ruling at summary judgment. Second, we analyze their challenge to the circuit court's denial of their fee petition and motion for additional sanctions for litigation misconduct. Each challenge raises its own standard of review, which we discuss in the appropriate analysis section, below.
A. Respondents' motion for summary judgment.
We first consider the circuit court's August 11, 2017 order granting summary judgment to Respondents. "A circuit court's entry of summary judgment is reviewed de novo [,]"[6] a term that "means [a]new; afresh; a second time."[7] Before addressing the parties' arguments, we first review the legislative background of West Virginia Code § 61-6-23, Berkeley County's noise ordinance, and *343 the circuit court's order granting summary judgment to Respondents.
(1) Legislative background of § 61-6-23.
In 1998, the West Virginia Legislature enacted a new code section, § 61-6-23,[8] limiting nuisance actions against shooting ranges in certain circumstances. Under subsection (b) of § 61-6-23, as originally enacted, a landowner may not bring a nuisance claim against a nearby shooting range for noise if the range was established before the would-be nuisance plaintiff bought his property.[9] But, the statute preserved a nearby landowner's nuisance claim for noise (1) if the shooting range was established after the landowner bought his property; or (2) if the landowner bought his property after the shooting range was established, but there was a substantial change in the use of the range or shooting activity ceased at the range for a period of two years, but then resumed.[10]
The Legislature amended § 61-6-23 in April 2017 (the 2017 Amendment).[11] Relevant to our discussion, the Legislature added two new subsections, (e)(1) and (f), which are reproduced, below:
(e)(1) No municipal or county ordinance regulating noise may subject a shooting range to noise control standards more stringent than those standards in effect at the time construction or operation of the shooting range began, whichever occurred earlier in time. The operation or use of a shooting range may not be enjoined based on noise, nor may any person be subject to an action for nuisance or criminal prosecution in any matter relating to noise resulting from the operation of a shooting range, if the shooting range is operating in compliance with all ordinances relating to noise in effect at the time the construction or operation of the shooting range began, whichever occurred earlier in time.
...
(f) It is the intent of the Legislature in enacting the amendments to this section during the 2017 regular session of the Legislature that the amendments be applied retroactively.
The Legislature also added in 2017 the following proviso to subsections (b) and (c) of § 61-6-23 : "Provided, That if a municipal or county ordinance regulating noise exists, subsection (e) of this section controls."
(2) Berkeley County's noise ordinance.
Berkeley County, where Petitioners' nuisance claim was pending in 2017, is one of the few in West Virginia that has passed a county-wide noise ordinance.[12] First adopted in 2007, and then amended in 2009, the ordinance places time and decibel limitations upon noise in residential settings.[13] The ordinance expressly states that those limitations "do not apply to: (1) [l]awful hunting or target shooting, trap, skeet or shooting ranges as defined in § 61-6-23, Code of West Virginia, 1931, as amended[.]"[14] Indisputably, the Berkeley County ordinance was in effect before Respondents commenced operations in 2011.
(3) The circuit court's order granting summary judgment to Respondents.
The stage set, we now turn to the circuit court's August 11, 2017 order granting Respondents' motion for summary judgment. Broadly, the circuit court found that "the recent amendment of W. Va. Code § 61-2-23 [sic] ... retroactively prohibits nuisance actions against shooting ranges[.]" In support of this conclusion, the circuit court reasoned that,
*344 [a]s confirmed by W.Va. Code § 8a-1-1, et seq., the WV State Legislature has provided general land use planning authority to governing bodies of counties and municipalities. The West Virginia Supreme Court has confirmed that local governing bodies have been given the express authority to govern land use planning and zoning matters ... Pursuant to W.Va. Code § 8A-1-1, et seq., "governing body of municipality or county commission may create planning commission to develop comprehensive plan for zoning, building restrictions, and subdivision regulations ..." McFillan v. Berkeley County Planning Com'n , 190 W. Va. 458 [438 S.E.2d 801] (1993).
Here, in drafting this Statute, the Legislature did not intend to preempt this local authority, and in fact, clearly designated the same. Berkeley County utilized its express land use planning authority to enact a local Noise Ordinance that specifically exempts, among nine various exemptions, shooting ranges. W.Va. Code § 61-2-23 [sic] authorizes each county to regulate shooting ranges as each deems appropriate. The instant applicable statute allows counties to impose whatever noise restrictions it desires, but protects gun ranges from nuisance actions if the gun ranges are operating in a manner consistent with the local noise ordinance imposed [sic].
....
In the instant case, the Plaintiffs seek injunctive relief from this Court. Unlike the cases cited herein, the Court is not required to amend or modify an injunction, but rather should apply the law as it stands today and find that the Plaintiffs are not entitled to the relief sought in the form of injunctive relief. ... Even absent the Legislature's clear intent of retroactivity, it is abundantly clear that the Legislature intended to prevent any prospective relief against shooting ranges in the form of an injunction predicated upon noise. Indeed, the statute specifically instructs that a shooting range may not be enjoined based upon noise. W.Va. Code 61-2-23(e)(1) [sic] as amended.[15 ]
Based on this reasoning, the circuit court granted summary judgment to Respondents.
(4) Discussion.
Petitioners challenge both the circuit court's application of § 61-6-23(e)(1) and the retroactive application of the 2017 Amendment to dismiss their lawsuit. We address those arguments in turn.
(a) Application of § 61-6-23(e)(1).
Petitioners attempt to counter the circuit court's conclusion, that § 61-6-23(e)(1) bars Petitioners' nuisance action against Respondents, in several ways. First, they contend that the circuit court's conclusion-that the 2017 Amendment to § 61-6-23 applies retroactively to prohibit all nuisance actions against shooting ranges-is overbroad and not supported by the text of the amendment. Second, they question the circuit court's reasoning that the 2017 Amendment empowers localities to regulate shooting ranges as they see fit and protects those ranges in compliance with the local rules from nuisance claims. Third, they argue that the Legislature could not have intended the 2017 amendment to immunize irresponsible shooting range operators from common law nuisance claims if a local noise ordinance does not apply to the shooting range. This, they argue, would cause an imbalance between the rights of the range and those of neighboring property owners-an imbalance other courts have found persuasive when considering similar statutes in other states. Finally, Petitioners contend the question of whether Respondents are in compliance with Berkeley County's noise ordinance is a factual one and, thus, summary judgment is premature.
Respondents counter that Berkeley County expressly chose to exempt shooting ranges from the limitations imposed on other activities by its noise ordinance. The 2017 Amendment to § 61-6-23 underscores and elevates this choice, they argue, because the 2017 Amendment allows localities to impose whatever noise restrictions they desire, thereby protecting ranges that comport with those local choices from noise-based nuisance claims. Finally, Respondents cite decisions from other states' courts finding ranges to be *345 in compliance with local ordinances for the purposes of similar statutes where the pertinent locality had not, in fact, enacted a local ordinance. This, they argue, is analogous to the situation presented in this case and weighs in favor of affirming the circuit court's order.
Petitioners' assignment of error is a question of statutory interpretation. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature."[16] "Thus, 'if the legislative intent is clearly expressed in the statute, this Court is not at liberty to construe the statutory provision[.]' "[17] "Rather, we apply a statute whose language is plain to the facts before us consistently with the expressed legislative intent."[18] In other words, "[w]here the language of a statute is free from ambiguity, its plain meaning is to be accepted and applied without resort to interpretation."[19] After reviewing § 61-6-23(e)(1), we find that the statutory language clearly expresses the intent of the Legislature and does not need to be construed.
Applying that statute to the facts of this case, we find that the circuit court correctly concluded that § 61-6-23, as amended in 2017, bars Petitioners' nuisance claim for injunctive relief against Respondents. First, it is undisputed that Petitioners purchased their property prior to the commencement of operations at Respondents' shooting range. Thus, § 61-6-23(c) (2014 and 2018 supp.) may permit Petitioners' suit against Respondents because, under that section, "[a] person who owned property in the vicinity of a shooting range that was established after the person acquired the property may maintain a nuisance action for noise against that shooting range," subject to certain time limitations upon the action. In the 2017 Amendment, however, the Legislature made clear that a property owner's right to maintain a nuisance lawsuit against a nearby shooting range-even one that commenced operations after the person bought his property-must yield to the combined effect of a municipal or county ordinance regulating noise and the new § 61-6-23(e).[20]
Second, it is undisputed that Berkeley County has a noise ordinance and that that ordinance removes this matter from the purview of § 61-6-23(c) and places it in the realm of § 61-6-23(e). Under § 61-6-23(e)(1),
[t]he operation or use of a shooting range may not be enjoined based on noise, nor may any person be subject to an action for nuisance or criminal prosecution in any matter relating to noise resulting from operation of a shooting range, if the shooting range is operating in compliance with all ordinances relating to noise in effect at the time the construction or operation of the shooting range began, whichever occurred earlier in time.
The parties do not dispute that Berkeley County's noise ordinance pre-dated the construction and operation of Respondents' range. Thus, pursuant to the plain language of § 61-6-23(e)(1), if Respondents' range operates in compliance with that ordinance, then Respondents are not susceptible to a claim for injunctive relief to remedy a noise nuisance.
Petitioners argue that Respondents' range cannot be "in compliance" with Berkeley County's noise ordinance because it is exempt from it, that is, there is nothing for the range to comply with. Citing dictionary definitions for the word "compliance," they contend that the word conveys action, and that because Berkeley County's noise ordinance requires no action from a shooting range, true compliance is impossible. Petitioners' argument presumes too much.
*346 " 'By virtue of the authority of Article 8, Section [13] of the Constitution of West Virginia and of Code, 1931, 2-1-1 it is within the province of the legislature to enact statutes which abrogate the common law.' "[21] In § 61-6-23(e)(1), the Legislature exercised that authority to abrogate the common law to create a zone of protection from noise-based nuisance suits for shooting ranges that do not violate local noise ordinances in effect at the earlier of the range's construction or commencement of operations. As Respondents argue, because Berkeley County chose not to impose noise limits on them, their range cannot be out of compliance with the ordinance. We simply cannot conclude that Respondents' shooting range falls outside the zone of protection created by the Legislature in § 61-6-23(e)(1) because it is exempt from Berkeley County's ordinance. To do so would render meaningless the protection created by the Legislature and leveraged by the express exemption in Berkeley County's ordinance.
At least two other courts have reached a similar conclusion in the context of their own states' comparable statutes. In 2001, the Supreme Court of Georgia examined § 41-1-9(c) of the Code of Georgia[22] and explained:
Ascribing ordinary signification to the words of this statute, as we are bound to do, OCGA § 1-3-1, we think its plain, commonsense meaning is as defendants suggest: A sporting clay course cannot be deemed a sound generating nuisance if it does not run afoul of local noise control ordinances (or ordinances aimed at the regulation of a sport shooting range).....
Jenkins County has not enacted an ordinance pertaining to noise control in general, or sport shooting ranges in particular. Thus, it cannot be said that defendants' sporting clay course failed to comply with noise control ordinances on the date on which it commenced operation. It follows that defendants' course could not be enjoined as a noise generating nuisance, and that the trial court erred in ruling otherwise.[23 ]
In 2018, the Supreme Court of Arkansas relied upon the Georgia court's analysis to find that its state's statute granted immunity to a shooting range from a noise-based nuisance claim, even though the shooting range operated in a locality that did not have a noise ordinance.[24] As in the Georgia case, the Arkansas court reasoned that under its state's statute[25] the shooting range at issue was
*347 entitled to immunity as long as the shooting range did not violate any local noise ordinances existing at the time it was constructed and began operation. Because no local noise control ordinances existed at the time the shooting range in this case began operation, the [shooting range] was in compliance with local noise control ordinances[.][26 ]
Respondents' situation under § 61-6-23(e)(1) is similar. Because Berkeley County chose not to impose noise limitations upon shooting ranges like Respondents', as a matter of law Respondents cannot have violated those same local noise ordinances. Consequently, the circuit court did not err by finding that § 61-6-23(e)(1) applied to bar Plaintiff's claim for injunctive relief.[27]
(b) Retroactive application of the 2017 Amendment.
Petitioners also challenge the circuit court's retroactive application of the 2017 Amendment to dismiss their entire nuisance claim against Respondents. Petitioners acknowledge that the Legislature specifically directed that the 2017 Amendment apply retroactively,[28] and that the Legislature may do so as to claims for injunctive relief.[29] Nevertheless, they argue that their verified complaint against Respondents included a claim for money damages, which is a vested property right that the Legislature may not eliminate by retroactive legislation. Respondents answer that Petitioners' verified complaint did not include a claim for money damages, and that the circuit court properly applied the 2017 Amendment retroactively to dismiss Petitioners' entire nuisance claim.
Foundationally, an accrued legal claim is a vested property right.[30] While "[t]he Legislature's unmatched powers allow it to sweep away settled expectations suddenly," it may not "retroactively change statutes so as to sweep away vested property rights[ ]"[31] without implicating both procedural due process under the West Virginia and federal constitutions[32] and the certain remedy provision of Article III, Section 17 of the West Virginia Constitution.[33] Thus, as Petitioners argue, if their 2015 verified complaint contained a claim for legal relief, rather than future injunctive relief, only, then the circuit court erred by applying the 2017 Amendment to dismiss that claim, regardless of the Legislature's direction that the 2017 Amendment should apply retroactively.[34]
*348 Upon review of Petitioners' verified complaint, we find that it contains a claim for money damages, a vested property right that the Legislature may not extinguish by retroactive legislation. West Virginia remains a notice-pleading state. As we explained in Roth v. DeFelice Care, Inc. , "this Court has not adopted the more stringent pleading requirements as has been the case in federal court and all that is required by a plaintiff is 'fair notice.' "[35] As Justice Cleckley explained,
[u]nder Rule 8, a complaint must be intelligibly sufficient for a circuit court or an opposing party to understand whether a valid claim is alleged and, if so, what it is. Although entitlement to relief must be shown, a plaintiff is not required to set out facts upon which the claim is based .[36 ]
This contrasts to pleading under the federal rules, which require a plaintiff "to plead facts to show that the plaintiff has stated a claim entitling him to relief."[37]
In their verified complaint, Petitioners demand "monetary damages for the cost of implementing reasonable and necessary noise abatement measures on their own property to comply with these guidelines and any other damages permitted by West Virginia law and supported by the evidence." They also ask for "any other damages permitted by West Virginia law and supported by the evidence" and "such other legal and equitable relief as the [circuit court] shall deem just and proper under the circumstances."[38] These demands evidently notified Respondents that Petitioners seek money damages as relief for the alleged nuisance conditions on Respondents' property because the demands prompted Respondents to act. During discovery, Respondents asked Petitioners to specifically identify all monetary damages they claimed in the lawsuit. Respondents also sought to trigger insurance coverage for Petitioners' claim expressly due to Petitioners' plea for money damages. Finally, Petitioners' plea for money damages does not disappear because it is pleaded in the alternative. Rule 8 of the West Virginia Rules of Civil Procedure expressly contemplates that "[r]elief in the alternative ... may be demanded." For those reasons, we find that the circuit court erred by applying the 2017 Amendment to § 61-6-23 retroactively to dismiss Petitioners' accrued nuisance claim for money damages.
B. Petitioners' fee petition and motion for additional sanctions for litigation misconduct
Petitioners also appeal the circuit court's denial of their fee petition and motion for additional sanctions for litigation misconduct. Petitioners argue that the circuit court applied the wrong subpart of Rule 37-Rule 37(a)(4)(C), not Rule 37(a)(4)(A) -rendering an otherwise mandatory fee award discretionary. They also contend that the circuit court's order rests on erroneous findings and overlooks Respondents' "obvious" discovery abuses, that is, that the circuit court erroneously focused only on the parties' dispute over the discovery of Respondents' customer lists and ignored other indicators of discovery misconduct. Finally, they argue that by denying their fee petition, the circuit court reversed its prior order inviting them to submit the petition. Respondents counter that Rule 37(a)(4)(C) applies to the fee petition and that, even if Rule 37(a)(4)(A) applies, the circuit court's finding that the parties were engaged in a legitimate discovery dispute satisfies the "substantially justified" exception to that rule's otherwise mandatory fee award.
We begin with Syllabus Point 2 of Sally-Mike Properties v. Yokum : "As a general rule each litigant bears his or her own attorney's fees absent a contrary rule of court or express statutory or contractual authority *349 for reimbursement."[39] Rule 37 is one of those rules. It is "designed to provide sanctions in order to ensure that those persons who are subject to discovery requests promptly and adequately respond."[40] Under Rule 37(a)(4)(A), when a circuit court grants a party's motion to compel discovery,
the court shall, after affording an opportunity to be heard, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorney's fees, unless the court finds that the motion was filed without the movant's first making a good faith effort to obtain the discovery without court action, or that the opposing party's answer, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust.
But, if a circuit court grants, in part, and denies, in part, the motion to compel, Rule 37(a)(4)(C) applies. That rule states:
If the motion is granted in part and denied in part, the court may enter any protective order authorized under Rule 26(c) and may, after affording an opportunity to be heard, apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner.
Under Rule 37, "the derelict party can avoid the sanctions of paying expenses, including attorney's fees, by showing that his conduct was 'substantially justified' or that such an award would be 'unjust.' "[41] The derelict party "has the burden of proving that his failure to supply the requested discovery was substantially justified or that other circumstances would make an award of expenses unjust[,] and ... a trial court's action in setting an award is subject to review for an abuse of discretion."[42]
The parties contest whether Rule 37(a)(4)(A) or Rule 37(a)(4)(C) applies in this case. We find this argument to be of no moment because the circuit court considered both and concluded that Respondents had presented a "legitimate dispute," a conclusion that aligns with the "substantial justification" exception found in Rule 37(a)(4)(A). So, we are left with the question of whether the circuit court erred by refusing to grant Petitioners their reasonable fees and costs because Respondents' opposition to Petitioners' discovery requests was "substantially justified,"[43] with particular emphasis on those requests aimed at discovering the identities of the users of Respondents' ranges.
We have not defined the phrase "substantially justified," although numerous federal courts have.[44] As summarized by a leading treatise, the federal courts hold that "a motion, or opposing a motion, is 'substantially justified' if the motion raised an issue about which reasonable people could genuinely differ on whether a party was bound to comply with a discovery rule,"[45] that is, if "there is a 'genuine dispute' as to proper resolution[.]"[46] Accordingly, we now hold that a motion under Rule 37 of the West Virginia Rules of Civil Procedure, or opposition to a *350 Rule 37 motion, is substantially justified if the motion or opposition raises an issue about which reasonable people could differ as to the appropriateness of the contested action.
Applying that standard, we find that the circuit court did not abuse its discretion by concluding that, in this particular case, Respondents' opposition to Petitioners' motion to compel presented a legitimate or genuine dispute, and thus did not merit sanctions under either Rule 37(a)(4)(A) or (C). While Petitioner views the circuit court's order granting, in part, and denying, in part, their motion to compel as an absolute win, that alone does not invalidate the circuit court's conclusion that Respondents' opposition to Petitioners' motion to compel was "substantially justified."
A review of the transcript of the hearing before the discovery commissioner shows that Respondents offered arguments in support of their objections based in either law or fact, and that, in several instances, the discovery commissioner questioned the breadth of Petitioners' discovery requests. For example, during argument regarding Petitioners' request for production 11,[47] the discovery commissioner asked, "What do receipts have to do with a nuisance case? That's what I'm struggling with." He also stated that he had "some concern about why it's any of the Goldstein's [sic] or the Discovery Commissioner's business, or the public's business, in particular, about [Respondents'] monetary receipts." The discovery commissioner ultimately recommended that Respondents produce documents responsive to request for production 11 subject to a protective order, and the circuit court adopted that recommendation. Nevertheless, that Petitioners ultimately prevailed on their motion to compel regarding request for production 11 and the vast majority of issues raised in that motion, does not necessarily render the circuit court's conclusion-that Respondents' opposition was legitimate, i.e. substantially justified-an abuse of the court's discretion.
With particular regard to requests for production 23 and 24, we agree with the circuit court that Respondents' position regarding the discoverability of their clients' information, while ultimately overruled, raised issues about which reasonable people could differ. At various times, Respondents argued that their customers' information was not discoverable because it was proprietary and confidential and that it was protected by the federal Constitution and various state and federal laws. While the circuit court ultimately dismissed those arguments and ordered Respondents to respond, that, however, does not mean that a reasonable person would not have raised a similar objection to the discovery requests given the seriousness of the issue.
Petitioners also argue that the circuit court's order denying its fee petition contradicted its prior orders. This is not an accurate reading of the circuit court's November 2016 order, which stated that "[Petitioners] may file an application for attorney fees and expenses in accordance with Rule 34(a)4 [sic] within 30 days of this order."[48] As discussed above, Rule 37 enables the party subject to a motion to compel to avoid the sanctions of paying expenses by showing that his conduct was substantially justified or that the award would be unjust. Although the circuit court invited Petitioners to submit a fee petition, the possibility always remained that Respondents would demonstrate either substantial justification for their actions, or that an award of fees would be otherwise unjust.
*351 Finally, Petitioners argue that even if the circuit court correctly found the dispute over Respondents' customer information was legitimate, the circuit court ignored other examples of litigation misconduct by Respondents that merit sanction. This, they argue, demonstrates that the circuit court's order rests on a clearly erroneous understanding of the facts of the case. We do not agree. In its order, the circuit court affirmatively stated that it had reviewed the transcript of the discovery commissioner's September 2016 hearing. It also stated that it had received copies of all pleadings, transcripts, and other filings related to Petitioners' fee petition and motion for additional sanctions for litigation misconduct. Thus, the circuit court had before it, and reviewed, the materials necessary to determine whether Respondents' actions were substantially justified and whether further litigation sanctions-that is, default judgment-were warranted. Following our review of the appendix record, we cannot say that the circuit court's denial of Petitioners' fee petition and motion for additional sanctions for litigation misconduct was an abuse of its discretion.
III. CONCLUSION
For the reasons previously stated, we affirm the circuit's order denying Petitioners' fee petition and motion for additional sanctions for litigation misconduct. We affirm, in part, and reverse, in part, the circuit court's order granting summary judgment to Respondents, and remand this matter to the circuit court to resume proceedings in the Petitioners' nuisance claim for monetary damages.
Affirmed in part, reversed in part, and remanded.
JUSTICE ARMSTEAD and JUSTICE JENKINS concur, in part, and dissent, in part, and reserve the right to file separate opinions.

We acknowledge the amicus curiae briefs filed on behalf of the National Rifle Association of America and the West Virginia Citizens Defense League. We value their participation in this case.

Petitioners assert that shooting activity began at the Training Center in September 2011. Respondents contend shooting activity began approximately five months earlier, in April 2011. This dispute is not germane to our decision on appeal because the parties do not dispute that shooting began at the Training Center after Berkeley County adopted its noise ordinance in 2007.

In response to Petitioners' requests for production 23 and 24, Respondents did not assert a specific objection and produced a list of approximately twenty-nine names and email addresses of individuals who participated in a 2011 training event.

Applegate, Morgan, and the CDL served their motion on Petitioners' and Respondents' counsel on March 15, 2017. According to the docket included in the appendix record, Applegate, Morgan, and the CDL filed the motion with the circuit court on March 17, 2017.

See Aetna Cas. & Sur. Co. v. Pitrolo , 176 W. Va. 190, 342 S.E.2d 156 (1986).

Syl. Pt. 1, Painter v. Peavy , 192 W. Va. 189, 451 S.E.2d 755 (1994).

Gastar Expl. Inc. v. Rine , 239 W. Va. 792, 798, 806 S.E.2d 448, 454 (2017) (internal quotation omitted).

1998 W. Va. Acts 632-33 (codified at W. Va. Code § 61-6-23 (2000) ).

W. Va. Code § 61-6-23(b) (2014).

Id . at § 61-6-23(b), (c), and (d).

2017 W. Va. Acts 22-24 (codified at W. Va. Code § 61-6-23 (2018 supp.) ).

"Nuisance: Excessive Noise in Residential and Similar Settings," Berkeley Cty Comm'n, adopted Sept. 13, 2007 and amended April 30, 2009, available at http://www.berkeleycountycomm.org/docs/ordinances/enoise.pdf.

Id .

Id .

Internal notes omitted.

Syl. Pt. 1, Smith v. State Workmen's Comp. Comm'r , 159 W. Va. 108, 219 S.E.2d 361 (1975).

In re I.M.K. , 240 W. Va. 679, 685, 815 S.E.2d 490, 496 (2018) (quoting Dan's Carworld, LLC v. Serian , 223 W. Va. 478, 484, 677 S.E.2d 914, 920 (2009) ).

Id . at 686, 815 S.E.2d at 497.

Syl. Pt. 2, Crockett v. Andrews , 153 W. Va. 714, 172 S.E.2d 384 (1970).

See W. Va. Code § 61-6-23(c) (2018 supp.) ("Provided, That if a municipal or county ordinance regulating noise exists, subsection (e) of this section controls"). This conclusion, however, is subject to our reasoning in the following section regarding the limits upon the Legislature's authority to amend statutes, retroactively.

Syl. Pt. 4, Verba v. Ghaphery , 210 W. Va. 30, 552 S.E.2d 406 (2001) (quoting Syllabus, Perry v. Twentieth St. Bank, 157 W.Va. 963, 206 S.E.2d 421 (1974) ).

Section 41-1-9(c) of the Code of Georgia states:
No sport shooting range or unit of government or person owning, operating, or using a sport shooting range for the sport shooting of firearms shall be subject to any action for civil or criminal liability, damages, abatement, or injunctive relief resulting from or relating to noise generated by the operation of the range if the range remains in compliance with noise control or nuisance abatement rules, regulations, statutes, or ordinances applicable to the range on the date on which it commenced operation.
Ga. Code Ann. § 41-1-9(c) (2014).

Jenkins v. Clayton , 273 Ga. 439, 542 S.E.2d 503, 503 (2001). But see Yates v. Kemp , 979 N.E.2d 678, 681-82 (Ind. Ct. App. 2012) (holding that Indiana's similar statute did not provide immunity to range where there were no applicable noise ordinances or laws with which range could comply); Gray v. Barnhart , 144 Pa.Cmwlth. 474, 601 A.2d 924, 926-27 (1992) (holding that nuisance immunity offered by Pennsylvania's similar statute did not apply where township had no noise control ordinance in effect when range was constructed).

3 Rivers Logistics, Inc. v. Brown-Wright Post No. 158 of Am. Legion, Dep't of Ark., Inc. , 2018 Ark. 91, 548 S.W.3d 137 (2018).

Arkansas Code § 16-105-502(a) and (b) state:
(a) Notwithstanding any other provision of law to the contrary, a person who operates or uses a sport shooting range in this state shall not be subject to civil liability or criminal prosecution for noise or noise pollution resulting from the operation or use of the sport shooting range if the sport shooting range is in compliance with noise control ordinances of local units of government that applied to the sport shooting range and its operation at the time the sport shooting range was constructed and began operation.
(b) A person who operates or uses a sport shooting range is not subject to an action for nuisance, and no court of the state may enjoin the use or operation of a sport shooting range on the basis of noise or noise pollution, if the sport shooting range is in compliance with noise control ordinances of units of local government that applied to the sport shooting range and its operation at the time the sport shooting range was constructed and began operation.
Ark. Code Ann. § 16-105-502(a) and (b) (2016).

3 Rivers Logistics, Inc. , 548 S.W.3d at 142.

Because our application of the plain language of § 61-6-23(e)(1) is dispositive, we do not address Petitioners' remaining arguments regarding its construction. Furthermore, § 61-6-23(e)(1) bars Petitioners' nuisance claim for injunctive relief as a matter of law, obviating Petitioners' argument that their claim for injunctive relief must be remanded for additional factual development.

See W. Va. Code § 61-6-23(f).

See Landgraf v. USI Film Products , 511 U.S. 244, 273, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994) (observing that relief by injunction operates in the future, so plaintiff had no vested right in the trial court's order) (citing American Steel Foundries v. Tri-City Central Trades Council , 257 U.S. 184, 201, 42 S.Ct. 72, 66 L.Ed. 189 (1921) ).

See Gibson v. W. Va. Dep't of Highways , 185 W. Va. 214, 225, 406 S.E.2d 440, 451 (1991), holding modified by Neal v. Marion , 222 W. Va. 380, 664 S.E.2d 721 (2008) ; see also Plaut v. Spendthrift Farm, Inc ., 1 F.3d 1487, 1495 (6th Cir. 1993) ("Since injunctive relief necessarily depends on a continuing affront to one's legal rights, while legal relief depends only on a judicial determination that one's legal rights have been violated with resulting cognizable damage to the claimant, Congress could permissibly change the law so as to deprive a party of its right to injunctive relief.") aff'd , 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995).

Gribben v. Kirk , 197 W. Va. 20, 26, 475 S.E.2d 20, 26 (1996) (cleaned up).

See id.

See Syl. Pt. 6, in part, Gibson , 185 W. Va. at 214, 406 S.E.2d at 440.

Cf. Martinez v. Asplundh Tree Expert Co. , 239 W. Va. 612, 618, 803 S.E.2d 582, 588 (2017) (holding that statute limiting types of damages available for employment-related claims is remedial statute that may be applied retroactively because Legislature specified that statute is to apply retroactively and statute does not impact vested right).

Roth v. DeFeliceCare, Inc. , 226 W. Va. 214, 220 n.4, 700 S.E.2d 183, 190 n.4 (2010) (quoting State ex rel. McGraw v. Scott Runyan Pontiac-Buick, Inc. , 194 W. Va. 770, 776, 461 S.E.2d 516, 522 (1995) ).

Id. at 220, 700 S.E.2d at 189 (emphasis in original) (quoting Scott Runyan Pontiac-Buick, Inc. , 194 W. Va. at 776, 461 S.E.2d at 522 ).

Id. at 220, n.4, 700 S.E.2d at 189, n.4 (citing Bell Atlantic Corp. v. Twombly , 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ; Ashcroft v. Iqbal , 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) ).

Emphasis added.

Syl. Pt. 2, Sally-Mike Prop. v. Yokum , 179 W.Va. 48, 365 S.E.2d 246 (1986).

Shreve v. Warren Assoc., Inc. , 177 W. Va. 600, 604, 355 S.E.2d 389, 393 (1987).

Id.

Id . at Syl. Pt. 3, in part.

W. Va. R. Civ. P. 37(a)(4)(A).

See 8B Wright, Miller & Marcus, Federal Practice and Procedure § 2288 n.31 (3d ed. 2010) (collecting cases).

Id .; see, e.g. , Doe v. Lexington-Fayette Urban Cty. Gov't , 407 F.3d 755, 765 (6th Cir. 2005) ("A motion is 'substantially justified' if it raises an issue about which 'there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.' ") (quoting Pierce v. Underwood , 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations and quotation marks omitted)); Maddow v. Procter & Gamble Co. , 107 F.3d 846, 853 (11th Cir. 1997) ("Substantially justified means that reasonable people could differ as to the appropriateness of the contested action.") (citing Pierce , 487 U.S. at 565, 108 S.Ct. 2541 ).

Decision Insights, Inc. v. Sentia Grp., Inc. , 311 F. App'x 586, 599 (4th Cir. 2009) (quoting Pierce , 487 U.S. at 565-66, n.2, 108 S.Ct. 2541 ).

Petitioners' request for production 11 states:
Please produce a true and accurate copy of all documents in your possession or control which reflect receipts from customers at any shooting range operated by either Defendant in Berkeley County, West Virginia, on each day from January 1, 2006 to the present.
Respondents objected to this request based on confidentiality and privilege. They also objected that it was not reasonably calculated to lead to admissible evidence. Petitioners' request for production 12 is identical to 11, except that 12 seeks the same materials from any of Respondents' shooting ranges located in Frederick County, Virginia.

The circuit court's order also stated that Petitioners had "substantially prevailed" against Respondents in the discovery dispute. However, that is the wrong standard to determine whether a party is entitled to reasonable expenses and fees under Rule 37.